**Durnel LACY, aka Durnell Lacy, aka Verdell Lacy, Petitioner,**

v.

**Gail LEWIS, Warden, Respondent.**

No. CV 99–1798 JSL (RC).

United States District Court,
C.D. California.

Sept. 12, 2000.

ORDER

LETTS, District Judge.

Having reviewed the papers filed in connection with this matter and being fully apprised of the relevant facts and law,

IT IS HEREBY ORDERED that Judgment shall be entered granting a conditional writ of habeas corpus, based on petitioner DURNEL LACY'S first claim that the "trial court erred by denying petitioner's motion for self-representation, violating his California and U.S. Constitutional rights." The court did not reach the petitioner's other claims.

IT IS SO ORDERED.

REPORT AND RECOMMENDATION
OF A UNITED STATES
MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable J. Spencer Letts, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On May 8, 1996, in the Superior Court for the County of Los Angeles, a jury convicted petitioner Durnel Lacy, aka Durnell Lacy, aka Verdell Lacy, on one count of possession of rock cocaine in violation of California Health & Safety Code ("H.S.C.") § 11350(a) (count 1), a felony, and one count of possession of a smoking device in violation of H.S.C. § 11364 (count 2), a misdemeanor. Clerk's Transcript ("CT") 84–87. In a bifurcated proceeding, the court found it to be true that petitioner had sustained three prior serious felony convictions, within the meaning of California Penal Code ("P.C.") §§ 667(b)–(i) and 1170.12(a)–(d), and one prior conviction within the meaning of P.C. § 667.5(b). CT 136; Reporter's Transcript ("RT") 639:17–641:8. The court sentenced petitioner under California's Three Strikes law to 25 years to life on count 1 and to a concurrent term of six months in the county jail on count 2. CT 168, 171–72; RT 660:1–661:17.

The petitioner appealed his convictions to the California Court of Appeal, which affirmed the judgment in an unpublished opinion filed October 17, 1997. Return to Petition for Writ of Habeas Corpus ("Return"), Exhs. B–C.[1] On December 4, 1997, petitioner filed a petition for review in the California Supreme Court, which denied the petition on February 18, 1998. Return, Exhs. D–E.

### II

The California Court of Appeal, in affirming petitioner's conviction, made the following findings regarding the facts and circumstances underlying the conviction;[2] At approximately 11 p.m. on the night of October 18, 1995, Deputy Sheriffs John Heald and Daniel Fedele were driving westbound on Imperial Highway from Vermont Avenue in Los Angeles. They observed petitioner jaywalking diagonally across Imperial Highway, from south to north. Deputy Fedele, the driver, pulled the patrol car into a parking lot on the north side of Imperial Highway, intending to detain petitioner for jaywalking. The petitioner was walking toward the parol car. When he was about three feet away, both Fedele and Heald saw him drop an object from his right hand.

Heald and Fedele got out of the car and approached petitioner. Fedele recovered the object which had fallen from petitioner's hand: a ziplock baggie containing what appeared to be two rocks of cocaine. Heald asked for and received permission to search petitioner and recovered a metal cocaine pipe from petitioner's right front pocket.

Michael Best, a criminalist with the Los Angeles Criminalistics Laboratory, testified that the objects in the ziplock baggie were subjected to scientific tests by his supervisor, Gary Chastain. The result of those test was that the objects were composed of .53 grams of a substance which contained cocaine in the free base form.

The petitioner testified that he had crossed Imperial Highway at a slight diagonal, going from south to north. Police officers stopped their car, got out, and began searching him. They asked him where he was going and where he had been, but did not ask for permission to search. The petitioner did not drop anything from his hand. Instead, after petitioner was stopped, Deputy Fedele searched the surrounding area, then returned to the patrol car and said, "Look what I found," or "What do we have here?" The petitioner did not possess cocaine or a cocaine pipe that night.

At the court trial on the prior convictions, the court ordered petitioner to provide fingerprints. The petitioner refused

---

1. The exhibits supporting the Return are attached to respondent's Motion to Dismiss the First Amended Petition for Writ of Habeas Corpus.

2. See Return, Exh. C at 84–85.

after being informed that a refusal could be construed against him as consciousness of guilt. The prosecution introduced two certified "prison packets" from the Department of Corrections and two from the Los Angeles County Sheriff's Department.

## III

On February 22, 1999, petitioner filed his original petition for writ of habeas corpus. On February 24, 1999, the petition was dismissed sua sponte with leave to amend, based on its vague and conclusory allegations. The petitioner filed a First Amended Petition on March 29, 1999. On May 25, 1999, respondent filed a motion to dismiss the First Amended Petition, arguing the petition contained unexhausted claims and that four of the claims were based solely on state law. On June 2, 1999, this Court found that Grounds Four, Six, Eight and Ten of the First Amended Petition failed to state a federal claim and the other claims had been properly exhausted, and ordered respondent to file a return addressing the merits of the cognizable claims.

On July 1, 1999, the respondent filed a return, but contended that a portion of Ground Seven was unexhausted. The petitioner filed a traverse on August 3, 1999. On August 13, 1999, this Court ruled that subclaim two in Ground Seven was unexhausted, and afforded petitioner the option of filing a Second Amended Petition dismissing that subclaim. On September 10, 1999, petitioner filed his Second Amended Petition dismissing the unexhausted subclaim.

The Second Amended Petition ("SAP"), as it now stands, challenges petitioner's conviction on the following grounds:

Ground One—The "trial court erred by denying petitioner's motion for self-representation, violating his California and U.S. Constitutional rights." SAP at 6.

Ground Two—The "trial court erred when it denied petitioner's 'Marsden' motion."[3] *Id.*

Ground Three—The "trial court erred when it infringed on petitioner's rights during trial" by not informing the jury that his was a "Three Strikes" case. SAP at 6–7.

Ground Four—The "trial court erred when refusing to sanitize petitioner's priors." SAP at 7.

Ground Five—The "trial court errored [sic] by allowing heresay [sic] testimony during Trial." SAP at 7a.[4]

Ground Six—The petitioner was prejudiced when "the court permitted improper testimony during the sufficiency analysis." *Id.*

Ground Seven—"The evidence as to count (1) was insufficient at the time petitioner['s P.C. § 1118.1] motion was requested." *Id.*

Ground Eight—"The Court refused to instruct [the jury] with (Caljic 2.01) ... [although] the prosecutor's case rest[ed] substantially on circumstantial evidence...." *Id.*

Ground Nine—"[T]he cumulative effect[ ] of the above claimed errors was prejudicial and deprived [petitioner] of [his] Due Process Right[ ] to a Fair Trial." *Id.*

Ground Ten—The "Trial Court Abused it's [sic] discretion when it denied Petitioner['s] motion to dismiss one or more priors." *Id.*

On December 2, 1999, Magistrate Judge Rosalyn M. Chapman appointed Ellen Barry, attorney-at-law, to represent petitioner. On December 20, 1999, Judge Chapman gave notice that an evidentiary hearing would be held regarding petitioner's Far-

---

**3.** *People v. Marsden,* 2 Cal.3d 118, 84 Cal. Rptr. 156, 465 P.2d 44 (1970).

**4.** Grounds Five to Ten are contained on the unnumbered page following page seven, which the Court will refer to as page 7a.

etta[5] claim (Ground One), and on April 13, 2000, an evidentiary hearing was held. The petitioner was present at the hearing and was represented by Ms. Barry. The respondent was represented at the hearing by Noah Hill, Deputy Attorney General. Oral evidence was received, and petitioner and respondent filed post-hearing briefs.

## DISCUSSION

### IV

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective April 24, 1996, worked substantial changes to the law of habeas corpus. *Moore v. Calderon,* 108 F.3d 261, 263 (9th Cir.), *cert. denied,* 521 U.S. 1111, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997). Of specific importance to the petitioner's claims are the revisions made to 28 U.S.C. § 2254(d), which now provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The United States Supreme Court has recently clarified the meaning of the key clauses in Section 2254(d):

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies the principle to the facts of the [petitioner's] case.

*Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *see also Van Tran v. Lindsey,* 212 F.3d 1143, 1153–54 (9th Cir.) ("[A]n "unreasonable application" of clearly established federal law [occurs] when [this Court's] independent review of the legal question does not merely allow [it] to conclude that the petitioner has the better of two reasonable legal arguments, but rather leaves [the Court] with a 'firm conviction' that one answer, the one rejected by the [state] court, was correct, and the other, the application of the federal law that the [state] court adopted, was erroneous—in other words that clear error occurred.").

A state court decision may not be overturned on habeas review, however, "because of a conflict with Ninth Circuit-based law, but rather a writ may issue only when the state court decision is 'contrary to, or involved an unreasonable application of,' an authoritative decision of the Supreme Court." *Moore,* 108 F.3d at 264 (citations omitted); *Van Tran,* 212 F.3d at 1154–55; *Duhaime v. Ducharme,* 200 F.3d 597, 600 (9th Cir.2000). "This does not mean that Circuit caselaw is never relevant to a habeas case after [the] AEDPA. [Circuit] cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help ... determine what law is 'clearly established.'" *Duhaime,* 200 F.3d at 600; *Van Tran,* 212 F.3d at 1153–55.

Further, under the AEDPA, a federal court shall presume that a determination of factual issues made by a state court

5. *Faretta v. California,* 422 U.S. 806, 832, 95 S.Ct. 2525, 2539–40, 45 L.Ed.2d 562 (1975).

is correct, and petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■ The California Supreme Court reached the merits of petitioner's claims when it denied his petition for review without citation to authority or a written opinion. *Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir.1992), *cert. denied*, 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). However, "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991). Thus, to determine the reasonableness of the California Supreme Court's decision, this Court must consider the opinion of the California Court of Appeal, which determined some of petitioner's claims, and issued a reasoned decision. As to those claims not addressed in a reasoned opinion by the California Court of Appeal, this Court must independently review them. *Cardwell v. Greene*, 152 F.3d 331, 339 (4th Cir.), *cert. denied*, 525 U.S. 1037, 119 S.Ct. 587, 142 L.Ed.2d 491 (1998).

## V

This Court, based on the state court record and the oral evidence adduced at the evidentiary hearing, makes the following findings:

1. On October 18, 1995, petitioner Durnel Lacy, aka Durnell Larry Lacy, aka Verdell Lacy, was arrested for possession of a controlled substance and paraphernalia used for smoking a controlled substance. CT 4–10, 14–15, 18–19; RT 344:4–361:26.

2. A preliminary hearing was held on November 6, 1995, in the Municipal Court for the Inglewood Judicial District, County of Los Angeles, State of California. CT 3–12. At the preliminary hearing, deputy Sheriff John Heald testified and two exhibits were admitted into evidence: a plastic bag containing "some off-white rock" (exhibit 1) and another plastic bag containing "a metal pipe" (exhibit 2). CT 4:16–10:26. Additionally, the parties stipulated that an expert forensic chemist, Gary Chasteen, if called to testify would state that he "performed a physical and chemical analysis on th[e] contents [of exhibit 1] and formed the opinion that [exhibit 1 contained] 0.053 grams of solid substance containing cocaine in the base form .…" CT 11:1–12.

3. Based on the evidence at the preliminary hearing, the court denied Lacy's motion to dismiss for insufficiency of the evidence and found probable cause to believe that Lacy had violated H.S.C. § 11350(a)(possession of a controlled substance), a felony, and H.S.C. § 11364 (possession of narcotics paraphernalia), a misdemeanor. CT 11:25–12:5. The court set bail in the amount of $10,000.00, and set the arraignment on November 20, 1995. CT 12:5–11.

4. On November 20, 1995, an information was filed in the Superior Court for the County of Los Angeles, case no. YA026165, charging Lacy with one count of violating H.S.C. § 11350(a), a felony, and one count of violating H.S.C. § 11394, a misdemeanor. CT 14–16. Additionally, Lacy was charged with having suffered four prior serious convictions within the meaning of California Penal Code ("P.C.") §§ 1170.12(a)–(d) and 667(b)–(i) and one serious felony offense for which he did not remain free of subsequent incarceration for five years within the meaning of P.C. § 667.5(b). *Id.*

5. On November 20, 1995, deputy public defender Bennett T. Mori ("Mori") was appointed to represent Lacy, and Lacy pleaded not guilty to the charges against him. CT 21.

6. On December 19, 1995, a pretrial and trial setting conference was scheduled; however, it was taken off calendar and continued to January 8, 1996. CT 22.

7. On January 8, 1996, Mori appeared without Lacy and waived time. CT 23.

8. On January 9, 1996, both Lacy and Mori appeared, Lacy waived time, and, at Mori's request, the pretrial conference and trial setting were continued to February 7, 1996. CT 24. January 9, 1996 Reporter's Transcript ("1/9/96 RT") IA:16–4A:11. During this hearing, the following discussion took place:

[Lacy]: Your honor, could I speak, for the record?

The Court: Yes.

[Lacy]: Your honor, I don't feel as though the counselor is—is at my best defense in terms of making preparation for this case. I—I—I would request the Court for another counselor in my case. [¶] I haven't not [sic] once spoke[n] to him since I been in confinement. I have no means of having any documents. I have asked him over and over about certain things, issues about the case. [¶] And he seems to me he's—he's—he has an over case load. And I would like to have someone prepare adequate for this case.

The Court: Well, that's why he was asking for a continuance, I think. Mr. Mori?

Mr. Mori: I'm not even going to respond, judge. I need time to prepare this case. It's a third-strike case. I'm not going to respond to that.

[Lacy]: Well, this is hard feelings, your honor.

The Court: Well, I find nothing that will require me to relieve him at this moment. [¶] However, what about time? Do you want to waive time or not?

[Lacy]: Yes. I need time so that I can have an adequate presentation for— for my case.

The Court: So you give up your right to be tried within sixty days, and agree the matter may be set for pretrial on February 7th?

[Lacy]: Yes.

The Court: And for trial within thirty days thereafter?

[Lacy]: Well, yes, provided my adequate defense is adequate. I would—[¶] I really would like to get another counselor.

The Court: I know. But I don't do it just based on your desires.

[Lacy]: Well, your honor, If—If—If—I haven't been able to talk with him not once since I been here, you know, since he had my case. And, to me, it's a very severe case against me.

The Court: [H.S.C. § ] 11350 is not a very severe charge.

[Lacy]: Well, strike case.

The Court: Well, no. The penalties may be, but the case itself is very simple.

[Lacy]: Well, that's—that's true. So if the—[¶] that's the bottom line. That, to me, has more meaning than the charge itself that I'm facing.

The Court: All right. [¶] I made my ruling. That will be it. [¶] The violation will go over to . . . February 7th. 1/9/96 RT 2A:13–4:A9.

9. On February 7, 1996, both Lacy and Mori appeared, and the jury trial was set to commence on February 27, 1996. CT 25.

10. On February 27, 1996, an amended information was filed, again charging Lacy with one count of violating H.S.C. § 11350(a) and one count of violating H.S.C. § 11364, as well as having suffered prior convictions within the meaning of P.C. §§ 1170.12(a)–(d) and 667(b)–(i) and P.C. § 667.5(b). CT 18–20.

11. On February 27, 1996, Mori informed the court that Lacy wished to be heard "in the nature of a Marsden [motion]."[6] February 27, 1996 Reporter's

---

**6.** In Marsden, the California Supreme Court held that a defendant has the right to discharge appointed counsel on the grounds of inadequate representation and, to facilitate

Transcript ("2/27/96 RT") 7A. Outside the presence of the prosecutor, the following exchange took place:

Mr. Mori: I can advise the court that Mr. Lacy has made complaints against me to the state bar. And I've been contacted by the state bar with regard to a lack of contact with Mr. Lacy. [¶] In other words, I think the gravamen of the complaint was that I was not talking to him about the case. [¶] I wanted the court to know that I've spoken to Mr. Lacy about his case in detail at all of his appearances.... [¶] And I'm making this record outside of the presence of the prosecution so that the court can hear Mr. Lacy out. And I don't want him to feel that he's not being heard, or not being given an opportunity to say something to the court, or not given an opportunity to communicate with me. From my standpoint, that's simply not true. [¶] This is a very serious matter, and I'm treating it that way. But Mr. Lacy has complaints about my representation, so I want him to be heard.

The Court: All right. [¶] I'll hear what you have to say, Mr. Lacy.

[Lacy]: Well, your honor, I'm mainly speaking of I feel the ... defense—I mean, the defense in which he using [sic] by—going by—[¶] I'm trying to get some means of investigation over certain issues about the charge in which I'm charged with, you know.

The Court: Well, give me some idea what you're talking about.

[Lacy]: Well, I—[¶] You know, the—[¶] What I've been alleged [sic] charged with, as far as possession or whatever, this is—this is where [sic] I'm speaking about. And if ... I'm told that [the] only thing I have to do is get up on the stand and state my side of the story opposed to that of some of the

arresting officers, that I'll have no means of investigating procedures during [sic] my behalf, defense in my behalf. [¶] It's just about impossible for me to try to prove myself to be innocent of the charge, you see. This is what I'm mainly concerned about, you know.

The Court: Well, you say that. But what is there to be investigated, in your mind?

[Lacy]: Well, I'm speaking of what the—[¶] Based on the police—arrest report and what was stated in the preliminary hearing as to they allege [to have] seen me throw[ ] some—throw some drugs out my pocket, which is not true, you know. [¶] And I'm trying to—

The Court: That is for the jury to decide whether that's true or not true. [¶] But what investigation is missing? That's what I'm trying to find out.

[Lacy]: Well, I'm trying to get some means, someone to—to investigate into that, into the issues, based on what they said about me, in order to try to substantiate—to—to show my innocence of the charge, you know.

The Court: Let's say you have an investigator. Where is he supposed to go?

[Lacy]: Well, to me, I—I would want it to be investigated as to—[¶] I wanted them to check the—the—the—certain issues.

The Court: Well, what? What? You see, you keep saying those things, and I don't—

[Lacy]: Well, they allege they seen [sic] me throwing some controlled substance out of my pocket.

The Court: I understand what they're saying.

[Lacy]: And they said that they retrieved the so-called substance, con-

___

the exercise of that right, the trial court must provide the defendant with "ample opportunity" to explain the basis of his motion to discharge. *Marsden,* 2 Cal.3d at 123–25, 84

Cal.Rptr. at 159–61, 465 P.2d 44. The hearing during which a defendant moves to discharge his appointed counsel has become known as a Marsden hearing.

trolled substance, that was in a . . . ziplock bag, or something of this nature.

The Court: All right.

[Lacy]: Well, them not bringing all the evidence in, to me, the baggies is [sic] just as pertinent to me as the controlled substance. I mean, if they gonna allege they accuse me of throwing some . . . controlled substance out of my pocket, [it] seem[s] like to me that they could fingerprint the bag to . . . verify—show verification of that issue, as well, you know. [¶] That, and not only that. There's some other issues.

The Court: Well, you're complaining about what the police officers have to do. Of course, they can or cannot fingerprint. But I'm still not clear on what you want your investigator to do.

[Lacy]: Well, that's what I want. That the issue of it.

The Court: What issue?

[Lacy]: That issue and the issue about, you know, . . . about the controlled—the bag, so-called controlled substance, so-called controlled substance that was in it. I would like that bag to be at hand and present, as well as—

The Court: Well, that would be at the time of trial they'd bring it in and show it to the jury.

[Lacy]: Well, this—well, this is what I would like him to pursue as a . . . proper defense for my case. I mean, that and some other issues, you know.

The Court: Well, what do you want him to pursue in that regard? That's what I'm trying to figure out.

[Lacy]: I'm speaking of the controlled bag, controlled substance.

The Court: Well, in general, that's usually in the locker at the sheriff's department or whoever picked it up. [¶] What do you want him to do about that?

[Lacy]: Well, I would like—[¶] Well, like they allege they seen me throw this out of my pocket. I would like for that to be part of the evidence of the . . . case.

The Court: You mean at the time of trial?

[Lacy]: Well, whenever. Whenever.

The Court: Well, I'm sure it would be.

[Lacy]: And I would like for that to be fingerprinted to—to see whether or not that were—that were—[¶] Well, what they stated about me throwing something out, I'm trying to show that . . . those charges, that I'm not guilty of it, you know. This is what I'm trying to show, you know. [¶] And that would be part of the defense in my behalf, I feel.

The Court: I understand that. [¶] But I don't understand what you want the investigator or the attorney to do that they can do to help you. That's· all.

[Lacy]: Well, I mean, you know, like not just say that there's dishonesty or they're dishonest in what they allege and charge and accuse me of. But there has [sic] been cases of . . . this nature. [¶] And cases of what—[¶] Severe case[s] in which . . . I'm looking at, in terms of my strikes, or something of this nature. I feel as though to check—to check that, along with the evidence, or to—to show proof of whether or not they have been ever accused or involved in something of this nature, falsely accused of planting information. I mean, these are the issues in which I'm stressing—I'm stressing, you know.

The Court: Okay. [¶] Anything else you want to tell me?

[Lacy]: Well, no, not really. You know, just trying to get a proper defense for my case. That's . . . about basically what it is, you know.

The Court: All right. [¶] [A]re you asking anything of me today, other than just expressing what you feel?

[Lacy]: Well, I would like those issues—[¶] I would like for those issues to be pursued, you know, in my case, as far as defense of my case.

The Court: Okay. [¶] Anything else?

[Lacy]: No, nothing that I can think of.

\* \* \* \* \* \*

[The prosecutor returns]

The Court: Okay. [¶] You say you needed until the 27th of March?

Mr. Mori: I'd like some time after I get the paperwork from counsel to get to the priors.

The Court: Okay. [¶] And is your client willing to waive time at this time?

[Lacy]: Yes.

The Court: Do you agree I can set this matter for trial on March 27th and go to trial on that date or within ten days thereafter?

[Lacy]: Yes.

\* \* \* \* \* \*

The Court: Put over to March 27th, zero of ten.

2/27/96 RT 9A:6–16A:15. At Mori's request, the case was continued to March 27, 1996, for a jury trial. CT 27.

12. On March 27, 1996, Mori informed the court that Lacy again wished to make a Marsden motion to have him relieved, and the following colloquy took place outside the presence of the prosecutor:

[Lacy]: Your honor, since I've had Mr. Mori as a[sic] attorney I—I haven't really been able to—to—to—to guess heads or tails as to what he's been doing in regards to making preparation for my defense in my case. [¶] This is past the fifth month. Which, I guess, be [sic] roughly four months since he's been assigned to my case. And I—I haven't really been able to—to accomplish or see to—to—to receive any information on this as to—as to as far as my defense is concerned.

The Court: What do you mean, "information"? What are you looking for?

[Lacy]: Well, certain things I would like to be done in my case.

The Court: Well, what? Give me some idea. I can't just dream them up.

[Lacy]: Well, to investigate certain issues in my case, you know.

The Court: Tell me what they are.

[Lacy]: Well, I spoke on them, some of them, part of them before.

The Court: Well, I understand that. They weren't—weren't adequate the last time.

[Lacy]: Well, I don't—What I'm saying, this is—to have the surrounding charges, as far as the strikes concerned in my case, and not to go—to come into the court or before a jury or trial without having adequate defense in my case—my case, I'm not—I could—that is not adequate counseling to me.

The Court: Well, what adequate defense are you speaking of? He can't make up a defense.

[Lacy]: It's not so much making up a defense. Just certain things ... I would like to get done.

The Court: What? What?

[Lacy]: Well, I would like to investigate the issues of the—the so-called controlled substance in which I'm so-called charged or alleged[ly] charged with.

The Court: Well, what investigation in that regard?

[Lacy]: Well, I wanted—[¶] I would like to have—to know as to about—[¶] I don't even know anything as to what I'm being charged with, in terms of amount or what or whatever, you know. I've never seen any paperwork or anything. I don't have any documents or ... court papers ... on anything. I don't have anything. [¶] I mean, you know, like coming in and just I talk with him for two or three

minutes before coming in here, and that's it.

\* \* \* \* \* \*

The Court: You went to [the] preliminary hearing.

[Lacy]: Yes.

The Court: Didn't you hear what they said?

[Lacy]: Well, I would like to see something on paper pertaining to it. I don't have [any] documents or papers.

The Court: What kind of papers are you looking for?

[Lacy]: I would like to have an arrest report.

The Court: Oh.

[Lacy]: I would like to have the preliminary transcript. I would like to have certain issues investigated in my case.

The Court: Well, you keep saying that. And I don't know what that is. [¶] But as far as those types of things, those are things the defense lawyer gets, not the defendant.

[Lacy]: Well, is no—is no one is—is—is pursuing this. I mean, every time in which I asked [sic] him or speak to him in regards to the case, he tell [sic] me about whether—about rush me into give me a twenty-five to life sentence, you know. And that's discouraging to me. [¶] You know, I'm not—I'm not here to—to sit up here and be just taken from a formality towards trying to get a twenty-five to life sentence in which he's constantly telling me about. [¶] You know, I—I would rather try to get some—to go on my own as a pro per and try to get some means of trying to get a defense for myself, you know. [¶] I don't—[¶] You know, as far as what he's telling me, something about a twenty-five to life sentence, you know, that is not an encouraging thing.

The Court: But we can't help what the law is.

[Lacy]: Well, it's not so much—[¶] what I'm speaking about, what—what he's doing in regards to my defense in my case. I—I don't see anything he's doing in regards to the defense.

The Court: Okay.

\* \* \* \* \* \*

[Lacy]: Well, your honor, I would like to—[¶] There's you know, things in which I—don't really feel—[¶] I would like—[¶] There's things that I really wanted him to try and pursue. I don't know. I don't feel comfortable.

The Court: But you never told me one thing so far of that nature.

[Lacy]: Well I would like to have—[¶] Like I say, I would like to have the fingerprints checked on those [items that] I'm so-called accused of discarding from my possessions.

The Court: Do you know whether there were any fingerprints that the People found on the thing?

[Lacy]: Wait a minute. Wait [a] minute. Your honor, there is—

[Mori]: Well, I will ask Mr. Lacy at this point not to discuss any strategy.

[Lacy]: Well, this is what I'm saying. I don't feel comfortable to just speak on it. Things of which I'm speaking of which I would like to discuss with someone in which I—my attorney, you know, something of that nature. [¶] You know, I'm not trying to—to—[¶] I really don't feel comfortable to just say it out where everyone can hear it. I mean, as far as making a[n] adequate defense for myself—

The Court: No. I can find no grounds for relieving Mr. Mori. That request is denied. ¶ Now, do you want me to trail it down for trial at this point?

Mr. Mori: Do you want to continue the case or do you want to trail it?

[Lacy]: Well, I don't know what is meant by "trailing."

The Court: Well, we have to bring it to trial within the next ten days. That's

what we mean by trailing it down. [¶] Could you ask the D.A. to come back in.

\* \* \* \* \* \*

[The prosecutor returns]

The Court: All right. [¶] What are we going to do? Trail it down for trial?

Mr. Mori: Well, your honor, because of whatever Mr. Lacy has said, it would be my request to continue the matter for trial. [¶] If Mr. Lacy is not amenable to waiving time, the only thing I can do is trail it down.

[Lacy]: I'd like to waive the time. I'm not going to just rush into the courtroom and not—

Mr. Mori: All right. I would ask for the date of April 23rd....

\* \* \* \* \* \*

The Court: You agree the matter may go over to the 23rd of April for trial, and go to trial on that date or within ten days thereafter?

[Lacy]: Yes.

The Court: Put over to April 23rd, zero of ten.

March 27, 1996 Reporter's Transcript ("3/27/96 RT") 19A:4–28A:3 (emphasis added).

13. Lacy's statement, on March 27, 1996, that he would rather "go on [his] own as a pro per" was an equivocal request to represent himself, made impulsively and angrily in response to perceived deficiencies in his representation by his trial counsel, Mori.

14. On March 27, 1996, at Mori's request, the case was continued for trial to April 23, 1996. CT 28; 3/27/96 RT 27A:1–28A:3.

15. On April 23, 1996, both Lacy and Mori appeared. April 23, 1996 Reporter's Transcript ("4/23/96 RT") 29A:5–7. Mori advised the court he was "trailing" in another court, and "would like to start Mr. Lacy's matter trailing. If we can come back on Monday, I think that would be six

of ten." 4/23/96 RT 29A:22–30A:1. The prosecutor did not object, and the court continued the case to April 29, 1996. CT 29; 4/26/96 RT 30A:2–5. Then the following colloquy occurred:

Mori: Your honor, Mr. Lacy wants to address the court.

The Court: Yes, sir? Go ahead.

[Lacy]: **Well, your honor, I request a pro per status on my case.**

The Court: This matter has been going on for five months. And I think it's not timely at this time. So that request is denied.

4/23/96 RT 30A:6–13 (emphasis added).

16. Lacy's request for "pro per status on [his] case" on April 23, 1996, was an unequivocal request to represent himself at trial.

17. The petitioner was sincere in making his request to represent himself on April 23, 1996, and he did not make the request for the purpose of delay.

18. On April 29, 1996, the case was continued to May 1, 1996, for a jury trial. CT 30.

19. On May 1, 1996, both the prosecutor and Mori announced they were ready for trial, and the case was transferred to a trial court; however, there were not enough jurors for a trial, and the case was continued to May 2, 1996. CT 31–32.

20. Voir dire commenced on May 2, 1996. CT 33.

21. On May 3, 1996, the jury was selected. CT 34.

22. On May 6, 1996, two alternate jurors were selected, the jury was empaneled, and the trial commenced. CT 35, RT 278:21–374:6.

23. Before the jury was empaneled, Lacy wrote two letters to the State Bar of California complaining about Mori's representation of him. Evidentiary Hearing Transcript ("EHT") 7:9–17, 19:23–20:3; 2/27/96 RT 9A:6–9.

24. If Lacy had represented himself in propria persona at his trial, his trial strategy would have been: (a) to attempt to cross-examine the prosecution's witnesses regarding their ability to see his activities on October 18, 1995; (b) to have the baggie tested for fingerprints to show his prints were not on it; and (c) to testify that he did not do it. EHT 11:6–19:12, 21:2–14.

## VI

■ The Sixth Amendment guarantees a criminal defendant's right to waive counsel and represent himself at trial. *Faretta*, 422 U.S. at 832, 95 S.Ct. at 2539–40; *United States v. Farhad*, 190 F.3d 1097, 1099 (9th Cir.1999), *cert. denied*, 529 U.S. 1023, 120 S.Ct. 1428, 146 L.Ed.2d 319 (2000); *United States v. George*, 56 F.3d 1078, 1084 (9th Cir.), *cert. denied*, 516 U.S. 937, 116 S.Ct. 351, 133 L.Ed.2d 247 (1995). "This right exists despite the fact that, in most cases, a defendant would be better served if represented by counsel." *Bribiesca v. Galaza*, 215 F.3d 1015, 1018 (9th Cir.).

■ To be effective, a defendant's decision to represent himself must be competently and intelligently made, and the trial court "must satisfy itself that the waiver of [the defendant's] constitutional right [to counsel] is knowing and voluntary." [7] *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541; *Godinez v. Moran*, 509 U.S. 389, 400, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993); *Lopez v. Thompson*, 202 F.3d 1110, 1117 (9th Cir.2000) (en banc). In determining whether a defendant's waiver of counsel is knowing and voluntary, this Court "must indulge in every reasonable presumption against waiver." *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977); *See also Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir.1989). Moreover, a request for self-representation must be unequivocal, timely, and not a tactic to secure delay.[8] *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975); *United States v. Hernandez*, 203 F.3d 614, 620 (9th Cir. 2000); *Peters v. Gunn*, 33 F.3d 1190, 1192 (9th Cir.1994); *Armant v. Marquez*, 772 F.2d 552, 555 (9th Cir.1985), *cert. denied*, 475 U.S. 1099, 106 S.Ct. 1502, 89 L.Ed.2d 902 (1986). Finally, the defendant must be "able and willing to abide by rules of procedure or courtroom protocol." [9] *McKaskle v. Wiggins*, 465 U.S. 168, 173, 104 S.Ct. 944, 948, 79 L.Ed.2d 122 (1984); *Peters*, 33 F.3d at 1192.

### A. The March 27, 1996 Request:

The California Court of Appeal found petitioner's March 27, 1996 request to represent himself was "not an unequivocal request for self-representation." Return, Exh. C at 5–6. In so finding, the California Court of Appeal concluded:

[The petitioner's] request was so equivocal that the court did not understand [the petitioner] to be requesting pro per status. It may well be ... that [petitioner] was only indicating that if the court did not provide alternate counsel, he would consider making a motion for self representation. It may be that [pe-

---

7. A waiver of counsel will be considered knowing and voluntary if the defendant is made aware of the nature of the charges against him, the possible penalties, and "the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541; *United States v. Allen*, 153 F.3d 1037, 1041–42 (9th Cir.1998), *cert. denied*, 525 U.S. 1170, 119 S.Ct. 1094, 143 L.Ed.2d 94 (1999); *Moran v. Godinez*, 57 F.3d 690, 698 (9th Cir. 1994), *cert. denied*, 516 U.S. 976, 116 S.Ct. 479, 133 L.Ed.2d 407 (1995); *United States v. Balough*, 820 F.2d 1485, 1487 (9th Cir.1987). Here, the trial court made absolutely no in-

quiry of petitioner to determine whether his request to represent himself was a knowing and intelligent waiver of his right to counsel, and made no findings on this issue.

8. Here, the trial court made no findings whether petitioner's request to represent himself was unequivocal or to secure delay.

9. Here, the trial court also made no findings whether petitioner was able and willing to comply with court rules.

titioner] mentioned self-representation "in passing anger or frustration."

*Id.*, at 6.

■ Because a criminal defendant has the right to counsel, an unequivocal request for self-representation requires, at the very least, that the request be clear enough that, if granted, the defendant cannot later claim he was improperly denied counsel. *See Adams*, 875 F.2d at 1444 ("Because a defendant normally gives up more than he gains when he elects self-representation, we must be reasonably certain that he in fact wishes to represent himself."); *Meeks v. Craven*, 482 F.2d 465, 467 (9th Cir.1973) (same). The requirement of unequivocality "ensur[es] that the defendant does not inadvertently waive th[e] right [to counsel] through occasional musings on the benefits of self-representation." *Adams*, 875 F.2d at 1444; *Meeks*, 482 F.2d at 467. Thus, a request is not unequivocal if it is "a momentary caprice or the result of thinking out loud," *Adams*, 875 F.2d at 1445, or an "emotional response" to a trial court's ruling. *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir.1990).

■ As of March 27, 1996, the petitioner was clearly frustrated with Mori's perceived indifference to the petitioner's requests, and he expressed this frustration and unhappiness by trying twice, in two Marsden hearings, to have Mori replaced. It was only in response to the court's second refusal to appoint a new attorney for petitioner that he stated: "You know, I—I would rather try to get some—to go on my own as a pro per and try to get some means of trying to get a defense for

myself, you know." 3/27/96 RT 21A:28–22A:2.

This Court finds that the petitioner's request to proceed in propria persona made on March 27, 1996, was merely an impulsive and angry reaction to perceived deficiencies in his representation by trial counsel, and not a clear decision by petitioner to represent himself. Finding 13. Therefore, the California courts' conclusion that this request was equivocal is neither contrary to, nor an unreasonable application of, federal law as established by the United States Supreme Court.

## B. The April 23, 1996 Request:

The California Court of Appeal found the petitioner's April 23, 1996 request to represent himself was an unequivocal request, but determined the request was "untimely" because "the case was five months old and was ready for trial." Return, Exh. C at 6.[10] This determination, as discussed below, is contrary to, and an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

■ "The timeliness of a Faretta request is a question of law." *Moore*, 108 F.3d at 265 n. 3. Here, respondent argues that petitioner's request to represent himself was untimely under California law, which requires that a Faretta motion be made "within a reasonable time prior to the commencement of trial [,]" *People v. Windham*, 19 Cal.3d 121, 127–128, 137 Cal. Rptr. 8, 12, 560 P.2d 1187, *cert. denied*, 434 U.S. 848, 98 S.Ct. 157, 54 L.Ed.2d 116 (1977), and that California law is neither

10. The California Court of Appeal did not find, and the respondents do not argue, that the petitioner's request was not knowingly and intelligently made or that the petitioner was not able and willing to abide by courtroom rules or procedure; thus, the only issue in dispute is whether petitioner's request was timely. *Moore*, 108 F.3d at 265; *Peters*, 33 F.3d at 1192. Nevertheless, the meager evidence available in the record suggests the request was knowing and intelligent. As the Ninth Circuit has held:

In deciding whether a defendant has knowingly and intelligently decided to represent himself, the trial court is to look ... to the quality of his decision. At its heart, the rule expounded by the Supreme Court in Faretta is a rule protecting individual autonomy. *Bribiesca*, 215 F.3d at 1020. As discussed herein, petitioner was sincere in making his Faretta request. Finding 17.

contrary to, nor an unreasonable application of, federal law. Return at 9–10. This argument is without merit.

█ "The only Supreme Court decision to discuss the timeliness of a request to proceed pro se is the *Faretta* decision itself." *Moore*, 108 F.3d at 265. "In *Faretta*, the [Supreme] Court twice described the timing of *Faretta's* request to represent himself: it was made 'weeks before trial,' and 'well before the date of trial.'" *Id.* (citations omitted). In Moore, the Ninth Circuit held the *Faretta* timeliness rule was "clearly established Federal law" for purposes of the AEDPA, and found a request to proceed pro se made sixteen days before the trial commenced was timely under *Faretta*.[11] *Id.*

█ The petitioner made an unequivocal request to represent himself on April 23, 1996, Findings 15–16, and the jury was not empaneled, and the trial did not commence, until May 6, 1996—thirteen days later.[12] Findings 15–23. As in *Faretta* and *Moore*, the petitioner's request to represent himself was made well before the trial; thus, it is timely. *Faretta*, 422 U.S. at 807, 95 S.Ct. at 2527; *Moore*, 108 F.3d at 265.[13]

█ In her post-hearing brief, respondent also argues that petitioner's *Faretta* request was made for the purpose of delay. "Delay per se is not a sufficient ground for denying a defendant's constitutional right of self-representation"; instead, there must be "an affirmative showing of purpose to secure delay." *Fritz v. Spalding*, 682 F.2d 782, 784 (9th Cir.1982); *United States v. Flewitt*, 874 F.2d 669, 674–75 (9th Cir.1989). In determining whether a defendant's request to defend himself is a tactic to secure delay, a court must consider: 1) the effect of delay, including whether a continuance would be required and whether a delay would prejudice the prosecution; 2) whether events preceding the request are consistent with a good faith assertion of the *Faretta* right; 3) whether the defendant reasonably could be expected to have made the motion at an earlier time; and 4) whether the defendant had bona fide reasons for not asserting the *Faretta* right earlier. *Fritz*, 682 F.2d at 784–85.

█ Here, contrary to the respondent's assertion, petitioner's request to represent himself was a genuine and sincere request, not made for the purpose of delay. Finding 17. First, and most important, the trial court made no finding that petitioner's request to represent himself was made for the purpose of delay, which strongly undercuts the respondent's argument. *See Armant*, 772 F.2d at 556 (holding "the district court was correct in not considering the petitioner's purpose because ... the state appellate court did not find that the motion was a tactic to delay trial").

Second, nothing in the record suggests that petitioner made his self-representation request for the purpose of delay. In

11. Prior to enactment of the AEDPA, the Ninth Circuit applied "a bright-line rule for the timeliness of Faretta requests: a request is timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay." *Moore*, 108 F.3d at 264; *United States v. Arlt*, 41 F.3d 516, 519 (9th Cir.1994); *Savage v. Estelle*, 924 F.2d 1459, 1463 n. 7 (9th Cir.1990), *cert. denied*, 501 U.S. 1255, 111 S.Ct. 2900, 115 L.Ed.2d 1064 (1991).

12. Under California law, "[t]he general rule is that where a ... trial will be conducted with alternate jurors the impanelment of the jury is not deemed complete until the alternates are selected and sworn." *In re Mendes*, 23 Cal.3d 847, 853, 153 Cal.Rptr. 831, 834, 592 P.2d 318 (1979); *People v. Armendariz*, 37 Cal.3d 573, 580, 209 Cal.Rptr. 664, 667–68, 693 P.2d 243 (1984).

13. The respondent's contention that this determination violates *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) is without merit since the application of *Faretta* is not the retroactive application of a new constitutional rule. *Moore*, 108 F.3d at 264 & n. 2; *cf. Snook v. Wood*, 89 F.3d 605, 613 (9th Cir.1996) (applying *Faretta* does not violate *Teague* when state court convictions became final after *Faretta*).

fact, the petitioner did not seek a continuance at the time of his request. *See* Finding 15; *Cf. Fritz*, 682 F.2d at 784 (petitioner's request for a continuance is "strong evidence of a purpose to delay"). Moreover, petitioner "was in jail at the time the [Faretta] motion was made and would apparently have remained there throughout the period of any continuance." *Armant*, 772 F.2d at 556. Additionally, at all prior appearances, as well as on April 23, 1996, petitioner's willingness to proceed to trial presented no obstacles to setting the trial date. *See* Findings 8, 11, 12 and 15; *Arlt*, 41 F.3d at 519 (finding a request for self-representation was not made for the purpose of delay when petitioner "indicated a willingness to facilitate the trial process").

Rather, the petitioner's request was based on his long-standing complaints about Mori's unresponsiveness. *See*, Findings 8, 11, 12 and 15. For over three months, petitioner had been unhappy with his counsel's representation and had expressed his unhappiness to the court. Findings 8, 12–13. Additionally, prior to making the request, petitioner had sent two letters to the California State Bar complaining about Mori. Finding 23. Finally, April 23, 1996, was the next court appearance petitioner had after the trial court denied his second Marsden motion to appoint new counsel. Findings 15–16. Under these circumstances, there is no evidence that petitioner's request to proceed pro se was made for the purpose of delay. *Hernandez*, 203 F.3d at 621 (finding there was no evidence that petitioner's request to proceed pro se was calculated to delay the proceedings when petitioner "simply wanted to proceed pro se because he did not trust his appointed counsel").

Nevertheless, the respondent contends that, despite his claim that he was not happy with counsel, petitioner's Faretta request is pretextual because petitioner would have used the same trial strategy as Mori. Such an argument misses the mark. A criminal defendant has a constitutional right to represent himself, *Faretta*, 422 U.S. at 832, 95 S.Ct. at 2539–40, and "the pointing out of reasons why one might desire self-representation is not a pre-requisite [to exercising this right]." *Lyles v. Estelle*, 658 F.2d 1015, 1020 (5th Cir.1981).

The improper denial of petitioner's Sixth Amendment right to self-representation is not subject to harmless error analysis. *Flanagan v. United States*, 465 U.S. 259, 268, 104 S.Ct. 1051, 1056, 79 L.Ed.2d 288 (1984); *McKaskle*, 465 U.S. at 177 n. 8, 104 S.Ct. at 950 n. 8; *Peters*, 33 F.3d at 1193. Accordingly, the petitioner is entitled to habeas relief on Faretta grounds.[14]

## VII

An indigent defendant is not entitled to appointed counsel of his choice. *Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir.1970). However, a court's refusal to allow substitution of appointed counsel can result in the denial of effective assistance of counsel if the defendant and his attorney are embroiled in an "irreconcilable conflict," resulting in a total lack of communication preventing an adequate defense.[15] *United States v. Moore*, 159 F.3d 1154, 1158 (9th Cir.1998); *Brown*, 424 F.2d at 1170. Review of the denial of a request for new appointed counsel requires consideration of the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint and the extent of the alleged conflict between the defendant

---

14. Since Ground One warrants habeas relief, it is not necessary for the Court to reach the merits of Ground Nine, in which petitioner claims the cumulative effect of his alleged errors deprived him of his due process right to a fair trial.

15. "The denial of a motion to substitute counsel implicates the defendant's Sixth Amendment right to counsel, and thus is properly considered in this habeas proceeding." *Bland v. California Dep't of Corrections*, 20 F.3d 1469, 1475 (9th Cir.) (citation omitted), *cert. denied*, 513 U.S. 947, 115 S.Ct. 357, 130 L.Ed.2d 311 (1994).

and his counsel. *Moore,* 159 F.3d at 1158–59; *Bland,* 20 F.3d at 1475.

In denying Ground Two, the California Court of Appeal found:

> [The petitioner] does not complain that the trial court failed to fully inquire about his dissatisfaction with appointed counsel. He does contend, however, that the court erred in denying his request for new counsel.... [The petitioner's] complaints were vague at best. He never identified any real problem in the representation he was receiving, and the court saw none. [The petitioner] was not happy with the message his counsel brought, that he faced a term of twenty-five years to life, but as the court informed [petitioner], "we can't help what the law is." [The petitioner] seemed to dislike his lawyer, but that does not amount to an irreconcilable conflict which would substantially impair effective assistance of counsel.

Return, Exh. C at 7–8.

■ On federal habeas review, the factual findings of a state court are entitled to a presumption of correctness unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here, petitioner has presented no clear and convincing evidence to rebut the Court of Appeal's findings. While these facts demonstrate that petitioner lacked confidence in his attorney, they fail to show an irreconcilable conflict resulting in a total lack of communication preventing an adequate defense. *Hudson v. Rushen,* 686 F.2d 826, 831 (9th Cir. 1982), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983); *United States v. Mills,* 597 F.2d 693, 700 (9th Cir.1979). The state courts' denial of petitioner's claim regarding his motion to substitute counsel is neither contrary to, nor an improper application of, federal law. 28 U.S.C. § 2254(d).

## VIII

■ In conducting habeas review, a federal court is limited to deciding whether a conviction violates the Constitution, laws or treaties of the United States; federal habeas corpus relief is not available for state law violations. 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Engle v. Isaac,* 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *see also* 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws or treaties of the United States."); *Dugger v. Adams,* 489 U.S. 401, 409, 109 S.Ct. 1211, 1216–17, 103 L.Ed.2d 435 (1989) ("[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution."). Merely adding the phrase "due process" to state law claims does not transform those claims into federal claims; rather, they remain state law claims "dressed up" as federal due process claims. *Langford v. Day,* 110 F.3d 1380, 1389 (9th Cir.1996), *cert. denied,* 522 U.S. 881, 118 S.Ct. 208, 139 L.Ed.2d 144 (1997).

■ This Court has previously found that Ground Four, alleging trial court error by refusing to sanitize petitioner's prior convictions, Ground Six, alleging trial court error by admitting "improper testimony during the sufficiency analysis," Ground Eight, alleging instructional error, and Ground Ten, alleging an abuse of the trial court's discretion in refusing to dismiss petitioner's prior convictions, fail to set forth federal claims. Accordingly, these claims are not cognizable by this Court on habeas review.

## IX

■ "It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed.... Information regarding the consequences of a verdict is therefore irrelevant to the jury's task." *Shannon v. United States,* 512 U.S. 573, 579, 114 S.Ct. 2419, 2424, 129 L.Ed.2d 459 (1994) (cita-

tion, footnote and internal quotation marks omitted). Under California law, "[a] defendant's possible punishment is not a proper matter for the jury's consideration in determining guilt or innocence." *People v. Allison,* 48 Cal.3d 879, 892, 258 Cal. Rptr. 208, 217, 771 P.2d 1294 (1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1835, 108 L.Ed.2d 964 (1990); *People v. Honeycutt,* 20 Cal.3d 150, 157 n. 4, 141 Cal.Rptr. 698, 701 n. 4, 570 P.2d 1050 (1977); *See also People v. Nichols,* 54 Cal.App.4th 21, 24–26, 62 Cal.Rptr.2d 433 (1997) (trial court was not required to inform jury of defendant's potential sentence in "three strikes" case, and trial court properly instructed jury not to consider issue of punishment); *People v. Baca,* 48 Cal.App.4th 1703, 1707–08, 56 Cal.Rptr.2d 445 (1996) (same).

Accordingly, petitioner had no constitutional right to advise the jury that he was being prosecuted under California's Three Strikes law. As such, the state courts' denial of Ground Three was neither contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d).

## X

In Ground Five, petitioner claims the trial court violated his Sixth Amendment right to confront and cross-examine witnesses by admitting into evidence laboratory reports by criminalist Gary Chastain, who was not a witness at the trial, through the testimony of criminalist Michael Best, under California Evidence Code § 1280.[16]

The Sixth Amendment provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." The Sixth Amendment's confrontation clause applies to the states through the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965). The confrontation clause provides a criminal defendant with the right to face those who testify against him and the right to conduct cross-examination. *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987). It serves the purposes of insuring reliability by means of oath, exposing the witnesses to cross-examination, and permitting the trier of fact to weigh the demeanor of the witness. *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970).

A defendant's right to confrontation, however, is not absolute. *Lilly v. Virginia,* 527 U.S. 116, 123–24, 119 S.Ct. 1887, 1893–94, 144 L.Ed.2d 117 (1999); *Ohio v. Roberts,* 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980); *Christian v. Rhode,* 41 F.3d 461, 467 (9th Cir.1994). "The admission of evidence under a firmly rooted exception to the hearsay rule that does not require unavailability of a witness, such as the public records exception, does not violate the Confrontation Clause, and the public records recognition to the hearsay rule is firmly rooted." *Roberts,* 448 U.S. at 66 n. 8, 100 S.Ct. at 2539 n. 8; *United States v. Contreras,* 63 F.3d 852, 857 (9th Cir.1995) (citations omitted); *United States v. Ray,* 930 F.2d 1368,

16. The California Court of Appeal described petitioner's confrontation clause objection as follows:

Sheriff's criminalist Gary Chastain tested the cocaine-like objects in the baggie, and Sheriff's criminalist Michael Best testified about the results of those tests.... [T]he court admitted the laboratory receipt tracking the evidence from the sheriff's station to the lab and back; the narcotics section note form filled out by Chastain, which included identifying information, the analyst's notes, and computer code used in generating the final report; an infrared spectrograph of the substance in the baggie, establishing that the substance included cocaine in a free base form; and the criminalist's final report on the evidence, printed out after all the tests were completed and the results determined. Best's [hearsay] testimony was that the documents indicated that the results of Chastain's tests were that the baggie contained, inter alia, cocaine base in the free base form.

Return, Exh. C at 12–13.

1370 (9th Cir.1990), *cert. denied,* 498 U.S. 1124, 111 S.Ct. 1084, 112 L.Ed.2d 1189 (1991). "Properly administered, the business and public records exceptions would seem to be among the safest of the hearsay exceptions." *Contreras,* 63 F.3d at 857.

 Here, the laboratory report establishing the drug as cocaine was admitted into evidence under Evidence Code § 1280, California's official record exception to the hearsay rule.[17] *See also United States v. DeWater,* 846 F.2d 528, 530 (9th Cir.1988) ("If the [laboratory report finding cocaine] was admissible under [the public records] exception to the hearsay rule, [the petitioner's] right of confrontation was not violated."); *Sherman v. Scott,* 62 F.3d 136, 140–42 (5th Cir.1995) ("Because the testimony of the supervisor demonstrated that the [laboratory] report [finding cocaine] had particular guarantees of trustworthiness and because cross-examination of the chemists who prepared the report would have been of little use to [petitioner], we find that the admission of the report did not violate the Confrontation Clause."), *cert. denied,* 516 U.S. 1093, 116 S.Ct. 816, 133 L.Ed.2d 760 (1996) and 516 U.S. 1180, 116 S.Ct. 1279, 134 L.Ed.2d 225 (1996); *Minner v. Kerby,* 30 F.3d 1311, 1314–15 (10th Cir.1994) (admission of police chemist's "laboratory notes into evidence [through testimony of chemist's supervisor] was proper under the Confrontation Clause"); *United States v. Baker,* 855 F.2d 1353, 1360 (8th Cir.1988) (laboratory reports of controlled substances were properly admitted under firmly rooted exception to hearsay rule, and such admission did not violate Confrontation Clause), *cert. denied,* 490 U.S. 1069, 109 S.Ct. 2072, 104 L.Ed.2d 636 (1989); *Reardon v. Man-*

*son,* 806 F.2d 39, 41–43 (2d Cir.1986) (chemists' reports admitted through testimony of their supervisor did not violate Confrontation Clause), *cert. denied,* 481 U.S. 1020, 107 S.Ct. 1903, 95 L.Ed.2d 509 (1987).

There is, thus, no merit to this claim, and the California courts' denial of it is neither contrary to, nor and unreasonable application of, federal law. 28 U.S.C. § 2254(d).

## XI

 To review the sufficiency of the evidence in a habeas corpus proceeding, the court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *McMillan v. Gomez,* 19 F.3d 465, 468–69 (9th Cir.), *cert. denied,* 513 U.S. 860, 115 S.Ct. 170, 130 L.Ed.2d 107 (1994). All evidence must be considered in the light most favorable to the prosecution. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *McMillan,* 19 F.3d at 469. These standards are applied to the substantive elements of the criminal offense defined by state law. *Jackson,* 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16; *Panther v. Hames,* 991 F.2d 576, 581 (9th Cir.1993).

 In Ground Seven, the petitioner contends there was insufficient evidence to convict him of violating H.S.C. § 11350, which provides in pertinent part:

(a) Except as otherwise provided in this division, every person who possesses (1) any controlled substance specified in subdivision (b) or (c), or paragraph (1) of subdivision (f) of [H.S.C.] Section 11054 [listing cocaine base] ... shall be pun-

---

**17.** At the time of the petitioner's trial, California Evidence Code § 1280 provided:

Evidence of a writing made as a record of an act, condition or event is not made inadmissible by the hearsay rule when offered to prove the act, condition or event if:

(a) The writing was made by and within the scope of duty of a public employee;

(b) The writing was made at or near the time of the act, condition, or event; and
(c) The sources of information and method and time of preparation were such as to indicate its trustworthiness.
Cal.Evid.Code § 1280 (West 1996).

ished by imprisonment in the state prison.

H.S.C. § 11350 (1996). Under California law, the "essential elements of possession of a controlled substance are 'dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character.'" *People v. Palaschak*, 9 Cal.4th 1236, 1242, 40 Cal.Rptr.2d 722, 893 P.2d 717 (1995) (citations omitted). These elements may be proved by circumstantial evidence. *Id.*

■ The petitioner contends that, because the documents admitted into evidence through the testimony of Best were hearsay, the evidence at trial was insufficient to sustain his conviction. Petition at 7a. This argument is without merit. As discussed above, the laboratory results showing cocaine were an *exception* to the hearsay rule. Those reports showed that "[t]here was one container that enclosed 0.053 grams of material which contained cocaine in the free base form." RT 383:4–394:6, 409:7–12. The petitioner's dominion and control over the drugs were established by the testimony of Officers Fedele and Heald that they saw petitioner drop an object from his right hand, which turned out to be a ziplock baggie containing rock cocaine. RT 346:15–22, 351:24–354:22, 358:19–360:9, 445:27–4508:12. Moreover, an inference may be drawn that petitioner knew the baggie contained cocaine from petitioner's effort to rid himself of it when the police approached. *See, e.g., People v. Banks*, 217 Cal.App.3d 1358, 1364, 266 Cal.Rptr. 574 (1990) ("[T]he fact that a zip-lock plastic bag was thrown is further evidence of unlawful conduct."). Finally, Deputy Fedele testified that .02 grams was a "usable amount" of cocaine, RT 450:16–451:3, 463:19–22; therefore, the jury could properly conclude the petitioner possessed a "usable amount" of cocaine. Based on this evidence, a rational trier of fact could find beyond a reasonable doubt that petitioner knew the baggie in his possession contained cocaine.

Therefore, the California courts' denial of this claim is neither contrary to, nor an unreasonable application of, federal law as established by the United States Supreme Court. 28 U.S.C. § 2254(d).

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that judgment be entered granting a conditional writ of habeas corpus, and requiring respondent to release petitioner and to discharge him from all other adverse consequences of his conviction in Los Angeles Superior Court case no. YA026165, unless charges are refiled against him in the Superior Court and counsel appointed within ninety (90) days of the date Judgment becomes final herein.

June 30, 2000.