**Prentiss GRIFFIN, Petitioner,**

v.

**Kelly HARRINGTON, Warden,
Respondent.**

Case No. CV 10–8753–VBF (SP).

United States District Court,
C.D. California.

Nov. 7, 2012.

Marilee Marshall, Marilee Marshall & Associates, Los Angeles, CA, for Petitioner.

J. Michael Lehmann, CAAG-Office of Attorney General of California, Los Angeles, CA, for Respondent.

## ORDER ACCEPTING FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

VALERIE BAKER FAIRBANK, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the First Amended Petition, records on file, and the Report and Recommendation of the United States Magistrate Judge. Further, the Court has engaged in a de novo review of those portions of the Report to which respondent has objected. The Court accepts the findings and recommendation of the Magistrate Judge.

IT IS THEREFORE ORDERED that Judgment be entered granting the First Amended Petition, and that respondent release petitioner unless the State of California elects to retry petitioner within 90 days from the date of this order.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

SHERI PYM, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Valerie Baker Fairbank, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

### I.

### INTRODUCTION

On November 16, 2010, petitioner Prentiss Griffin, a California prisoner, filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254, challenging his 2006 murder conviction that followed the admission of unsworn testimony at his trial. On

November 24, 2010, petitioner filed a First Amended Petition ("FAP") and Memorandum in Support of First Amended Petition ("FAP Mem."), which the court ordered filed and served on December 13, 2010. On April 29, 2011, petitioner, now represented by counsel, filed a Supplemental Memorandum in Support of First Amended Petition ("FAP Supp. Mem.").

The FAP and supporting memoranda raise three claims for relief: (1) the admission of unsworn testimony and out-of-court statements violated petitioner's Due Process and Confrontation Clause rights; (2) petitioner was denied effective assistance of counsel when trial counsel failed to timely object to the admission of a witness's unsworn testimony; and (3) the evidence was insufficient to support the jury's verdict regarding petitioner's murder conviction. On June 17, 2011, respondent filed an answer, arguing that a portion of petitioner's claim in ground one is procedurally barred for failure to comply with California's contemporaneous objection rule, but that, in any case, the California courts' rejection of each of petitioner's claims was reasonable.

The unsworn testimony in this case was given at trial by the only witness to identify petitioner as the shooter. After refusing to take the oath, and without any objection from petitioner's trial counsel, the witness (as expected) recanted his statements identifying petitioner as the shooter, which then allowed the prosecution to introduce the witness's prior inconsistent statements made in a recorded interview that incriminated petitioner. Although the admission of unsworn evidence violates the Confrontation Clause, this court finds that the California courts properly rejected petitioner's claim that the trial court violated his rights, since petitioner waived his confrontation right by failing to object at trial. But the California courts' finding that petitioner did not receive ineffective assistance of counsel is another matter.

Based on the court's review of the trial record, the California Court of Appeal's finding that petitioner's trial counsel was not ineffective depends upon an unreasonable determination of the facts. First, the Court of Appeal determined that trial counsel's failure to object to the unsworn testimony was a reasonable tactical decision, despite the fact that trial counsel submitted a declaration stating it was a mistake, and even though the only way the witness's prior incriminating statements could have been excluded was if he had not been allowed to testify. Second, the Court of Appeal determined that the failure to object was harmless because any objection would surely have resulted in the witness taking the oath, even though the record shows that he had already refused to do so, and the trial judge who had dealt with him opined at the time that it was unlikely the witness would take the oath if recalled and pressed to do so. By failing to object to the unsworn testimony, petitioner's trial counsel missed his one chance to keep out the most incriminating evidence in the case. This was ineffective assistance. Accordingly, the FAP should be granted and an order should be issued directing respondent to release petitioner unless the State of California elects to retry petitioner within 90 days of the filing of the order.

## II.

### STATEMENT OF FACTS

This court has independently studied the state court record because petitioner is challenging the sufficiency of the evidence to support his conviction. *See Jones v. Wood,* 114 F.3d 1002, 1008 (9th Cir.1997).

### A. *Prosecution Evidence*

One man was killed and another wounded by gunshots fired from several areas of

a parking lot at the Artesia Transit Center at around 1:00 a.m. on March 5, 2005, when a gathering of rival gang members and others turned violent. Petitioner is a member of the Grape Street Crips street gang. Reporter's Transcript ("RT") at 371. Dwin Books, the decedent, was a member of the Bounty Hunter Bloods. *Id.* Nearly a year later, Fred Wilberger,[1] who was then in prison on federal gun charges, told a police detective that he was there and saw petitioner fire gunshots at both victims. RT at 606–08. Petitioner was arrested and charged with murder and attempted murder. RT at 620; Clerk's Transcript ("CT") at 28–32 (Information). When petitioner was arrested and taken to the Harbor division police station in San Pedro, he asked the officer where they were going and said, "I didn't do a murder down there. I thought we were going to the L.A.P.D.," which has a division facility close to the Transit Center. RT at 623.

At trial, Waylon Walton, the surviving victim, testified. RT at 327. Walton was not a gang member, but was at the Transit Center to talk to girls. RT at 329, 336. When he heard shots, he did not realize at first that he had been shot. RT at 329–31. He did not know Dwin Brooks and did not see anyone doing the shooting that night. RT at 336. Walton had not seen any arguments prior to the shooting. *Id.* He had never seen petitioner before and did not see petitioner at the Transit Center that night. RT at 337, 341.

Petitioner's trial counsel knew in advance that Wilberger would testify reluctantly and would likely recant his statements to the police. RT at 343. Counsel also knew the jury would likely hear Wilberger's police interview, and thus in advance of Wilberger's testimony, counsel

moved to strike a limited portion of the statement he believed was inflammatory and prejudicial, which motion the court granted. *Id.* at 343–45.

The state called Wilberger to the witness stand. RT at 351. The clerk told Wilberger to raise his right hand and read him the oath. RT at 353. Silence apparently followed because the clerk then said, "I need a response, an answer." *Id.* Wilberger said, "No." *Id.* The trial judge thereafter removed the jury from the courtroom and addressed the witness. The following dialogue ensued:

> Trial judge: You have been told to swear to tell the truth. Do you understand that?
>
> Wilberger: Yes, Ma'am.
>
> Trial judge: How old are you?
>
> Wilberger: 24.
>
> Trial judge: So you're old enough to know what the truth is, right?
>
> Wilberger: Yes, Ma'am.
>
> Trial judge: All right. We're going to proceed with your testimony. Do you understand that?
>
> Wilberger: Yes, Ma'am.

RT at 354. The trial judge then instructed the prosecutor to take Wilberger as a hostile witness and proceed with questioning. *Id.*

Direct examination commenced. *Id.* Petitioner's trial counsel did not object prior to the direct examination of Wilberger. On direct examination by the prosecutor, Wilberger answered every question, but denied all knowledge of petitioner and the shooting, and also denied having ever identified petitioner to the police. RT at 355–64. Petitioner's counsel cross-examined Wilberger with just two questions: had he

---

**1.** Wilberger's name is spelled various ways throughout the record. Because Wilberger spelled his name "Wilberger" when asked to do so on the stand, the court adopts this spelling here and has changed contrary spellings without notation throughout this Report and Recommendation.

ever seen petitioner before, and had he seen petitioner on March 5, 2005. RT at 364–35. Wilberger answered "No" to both questions and was excused as a witness. *Id.*

The following morning before the jury was brought out, the trial court discussed with counsel the recording of the conversation between Wilberger and Detective Weber, the police detective who conducted the interview where Wilberger identified petitioner as the shooter, ordering that a portion of it be deleted. RT at 601. The prosecutor said she planned on playing the tape by recalling Detective Weber the following morning, since she needed time to edit the tape and Detective Weber was already ready to take the stand that morning. *Id.* at 601–602.

The examination of Detective Weber commenced. *Id.* at 603. Without explanation for the change in schedule, the prosecutor asked the detective about his interview with Wilberger to begin laying the foundation to introduce the tape. *Id.* at 608; Cal. Evid. Code, § 1235. At this point, petitioner's counsel asked to go on record at sidebar. RT at 608. Petitioner's counsel said, "I just want to object for the record for the tape coming in because Mr. Wilberger didn't give us any sworn testimony yesterday." *Id.* at 609. The prosecutor was flummoxed by the objection, saying she did not know the law in this area and that the objection was not something she expected from counsel. *Id.* The prosecutor asked first if she could take a recess to research the law on point and second whether Mr. Wilberger could be recalled to re-administer the oath to him. *Id.* at 609–610. The trial court denied the request to recall Mr. Wilberger, as the trial court was skeptical that Wilberger would then take the oath when he previously refused, and stated it would not recall Wilberger unless the prosecutor knew he would take the oath. *Id.* at 610.

Following a recess, the prosecutor argued and the trial court agreed that petitioner's counsel had waived the objection by not objecting immediately and by conducting a cross examination. *Id.* at 611. As part of this discussion, both the trial court and the prosecutor pointed out that petitioner's counsel made no previous objections to the oath-taking, and petitioner's counsel did not dispute this, although he did dispute the legal conclusion that this amounted to a waiver of the objection. *Id.* at 611–12. Evidence of Wilberger's statement to the police was then put in evidence. RT at 613. In that taped statement, Wilberger told detectives that he saw the shooter, he thought the shooter's name was "Prentiss," and he believed the shooter could be either of two persons in a poor-quality photo six pack he was shown. CT at 78, 89.

Nartrella Williams, Dwin Brooks's girlfriend, also testified at trial. RT at 370. Williams met up with Brooks and Wilberger at the Transit Center on the night of the murder. RT at 371–73. Williams also saw petitioner, with whom she had a previous sexual relationship, with his purple Regal car that night. RT at 375, 409. Williams witnessed a group of men come up to her, Brooks, and Wilberger and "gang bang on them." RT at 375–76. Wilberger responded in kind. RT at 376. The rival men then walked away. RT at 377. Williams urged Brooks to leave at this point, and Williams and her friends started to leave. *Id.* Petitioner, who was by his car, then signaled to Williams with one of his hands that she should leave or move out of the way. RT at 378. Williams could not see his other hand. RT at 379. Williams ran away into her friend's car. RT at 378–79. While she was running, approximately three second after she left Brooks, she heard a lot of gun shots. RT at 379.

A recording of an interview between Williams and two detectives was also played at trial. RT at 905. In the recording, Williams said that she did not move out of the way at first because she knew what they were going to do. CT at 93, 95. All of the Grape Street gang members' cars were parked in one direction as though they had planned it. CT at 104–05. When petitioner signaled that she should move, his car door was open and he was standing in his door. CT at 101. Detectives asked Williams which hand petitioner used to wave her out of the way, but Williams gave an unclear response. CT at 102. She could not see the other hand. CT at 102. Williams said she never saw petitioner with a gun that night. CT at 95. Williams had previously been in petitioner's car and knew that it had a stash box where petitioner hid guns. CT at 103. After the shooting, petitioner had people call Williams's house to tell her he was listening. CT at 112. Williams believed petitioner would hurt her because of what she saw: "I didn't see him shoot but I know ... when he told me to move ... I knew ... right after that I knew he was gonna shoot ..." CT at 112. Wilberger later told her petitioner did the shooting. CT at 95.

Ballistics evidence showed some of the shots fired that night could have come from the area where Williams said petitioner was standing. *See, e.g.,* RT at 648.

### B. *Defense Evidence*

Georgetta Chevalier testified that on March 4, 2005, she got off of work around 10:00 p.m. or 11:00 p.m. RT at 929. She and some friends first went to the skating rink then to the Transit Center sometime after 12:00 a.m. on March 5, 2005. RT at 929–30. Chevalier did not know petitioner, had never seen him before, and did not see him at the Transit Center. RT at 931. Chevalier had grown up with Brooks and was good friends with him. RT at 931–32.

Chevalier heard gunshots and then saw people running and cars moving to get away. RT at 930–31, 934. She too drove to try to get away from the scene. RT at 934.

Chevalier spoke to police a week or two later. RT at 935. She told them she saw several people shooting, but that petitioner was not one of them. The shooters were Diamond, Tweeter, and Doodles or Little One, Nartrella Williams's younger brother. RT at 936, 939–40. She saw a gun in each of these individuals' hands. RT at 943.

### III.

### *PROCEDURAL HISTORY*

On December 13, 2006, a Los Angeles County Superior Court jury convicted petitioner of the first degree murder of Dwin Brooks (Cal. Penal Code § 187(a)). CT at 278. The jury also found true allegations that petitioner personally used a firearm in the commission of the offense (Cal. Penal Code § 12022.53(b)-(d)), and that the offense was committed for the benefit of a criminal street gang (Cal. Penal Code § 186.22(b)(1)(C)). *Id.* at 241, 278. The jury found petitioner not guilty of the attempted murder of Waylon Walton (Cal. Penal Code §§ 664, 187(a)). *Id.* at 242.

Petitioner waived his right to a jury trial on the prior conviction strike allegation. CT at 63 (information alleging prior conviction); RT at 951–52 (petitioner waiving right to jury trial). On January 25, 2007, the court found the prior strike allegation true. CT at 271. On March 26, 2007, the trial court sentenced petitioner to twenty-five years to life, doubled to fifty years to life for the prior conviction strike. CT at 276–78. The court then added another 25 years to life for the personal use of a firearm enhancement, plus five years for a prior serious felony conviction and ten years for the gang enhancement, for a

total term of ninety years to life in prison. *Id.*

Petitioner appealed his conviction to the California Court of Appeal, contending the trial court should not have admitted the Wilberger impeachment evidence because Wilberger never took the oath, that insufficient evidence supported his conviction, and that he received ineffective assistance of counsel. Lodgs. 3–8. The California Court of Appeal affirmed on October 10, 2008 because petitioner's objection to the evidence was waived when petitioner's counsel cross–examined Wilberger instead of objecting to his testimony. Lodg. 9 at 4–5. Since petitioner's substantial evidence argument depended on a holding that Wilberger's statements should not have been in evidence, the court also denied that claim. Lodg. 9 at 5. Because the record was not properly developed as to the ineffectiveness of counsel claim, the California Court of Appeal denied it as best resolved by a habeas corpus petition. Lodg. 9 at 5–6. Petitioner also contended the court erred by imposing the ten-year street gang enhancement. Lodg. 6. The California Court of Appeal agreed and modified the judgment to eliminate that part of the prison sentence. Lodg. 9 at 6.

On December 23, 2008, the California Supreme Court denied petitioner's petition for review. Lodg. 11.

On November 5, 2009, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, supported by the declaration of his trial counsel. Lodg. 12, Ex. 1. According to trial counsel, Wilberger "refused to be sworn, refused to promise to tell the truth, and refused to answer nearly all the questions put to him by the district attorney."[2] Lodg. 12 Ex. 1 at 1. Petitioner's counsel stated he thought he had objected to any examination of Wilberger when he first refused to be sworn. "[I]f I failed to do so, I believe I should have objected immediately to any further examination of Mr. Wilberger to preserve the question for [petitioner] Griffin's appeal." *Id.* As far as his failure to object or move to strike at the end of Wilberger's direct examination, counsel stated:

Mr. Wilberger's refusal to answer questions took place before the jury. Because [he] was being so evasive, the jury paid very close attention to the proceedings at that point. I was concerned that Mr. Wilberger's actions left the impression that [he] had evidence which was, or which would be, damaging to Mr. Griffin;

At the end of the prosecutor's direct examination, I did not move to strike Mr. Wilberger's unsworn testimony. I believed at that point that I had to ask [him] some questions, in order to rebut any impression left by the prosecutor's direct examination. I believed that without asking any questions, the jury would think I was conceding Mr. Griffin's guilt;

I did not believe the jury would understand that Mr. Wilberger's statements, which were made without any oath, could not technically be considered evidence. In addition, I believed that because the court allowed the proceedings with Mr. Wilberger to go forward in front of the jury, the trial court permitted the jury to believe [his] statements were valid evidence, even though he refused to answer nearly all questions put to him;

Detective Weber was called the next day, to testify about his interview of Mr. Wilberger at federal prison, and to play

---

**2.** This last assertion is not correct. Wilberger answered every question, but gave answers contradictory to those contained in his police interview and denied any knowledge of petitioner or the events at the Transit Center that night.

Wilberger's taped statement to the jury. I did object at that point to any use of Mr. Wilberger's out-of-court statements to Det. Weber, and I argued there was no basis for the use of the statement because Wilberger had not given any sworn testimony. However, my objection was overruled, and Mr. Wilberger's taped statement was played for the jury. *Id.* at 1–2.

Relying on his trial counsel's declaration, petitioner contended that counsel provided ineffective assistance, and that a different result was reasonably probable absent that error. Lodg. 12. The California Court of Appeal denied the petition on July 22, 2009, 2009 WL 2170976. Lodg. 19. The court first found that trial counsel "knew he was waiving his objection but elected to cross-examine Wilberger" and that this tactical decision was entitled to great deference, especially considering that "the [trial] court came close" to swearing in Wilberger. *Id.* at 6–7. Second, the court concluded that petitioner failed to demonstrate that a more favorable outcome was reasonably probable, and that petitioner was asking the court "to speculate in the face of evidence that at least suggests the oath would have been taken had the proper question been asked." *Id.* at 7–8.

One justice filed a dissenting opinion, pointing out that trial counsel conceded in his declaration that he committed an error not the result of a tactical decision, and "it is not a close question whether this was, in fact, an error." Lodg. 19, Dissent at 1. Further, the dissent argued, prejudice was clear because had the objection been made, it clearly would have been granted, and it was "hard to imagine that any jury would have handed down a murder conviction based on 'evidence' that is as inconclusive" as the remainder of the evidence against petitioner. *Id.* at 3. "This would

have left the prosecution with no evidence to convict." *Id.*

On October 14, 2009, the California Supreme Court denied petitioner's petition for review. Lodg. 21.

## IV.

### *STANDARD OF REVIEW*

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA provides that federal habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2) (emphasis added).

■ In assessing whether a state court "unreasonably applied" Supreme Court law or "unreasonably determined" the facts, the federal court looks to the last reasoned state court decision as the basis for the state court's justification. *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir.2004). Here, the California Court of Appeal's October 10, 2008 decision on direct appeal stands as the last reasoned opinion on petitioner's Confrontation Clause and sufficiency of the evidence claims. Lodg. 9. The Court of Appeal's July 22, 2009 opinion on habeas review stands as the last reasoned decision on petitioner's ineffective assistance of counsel claim. Lodg. 19.

■ Petitioner's due process claim is intertwined with his Confrontation Clause

claim and is largely predicated on his claim that state law was violated. Perhaps because of this, the Court of Appeal did not explicitly address petitioner's due process claim, but only implicitly rejected it. With respect to those claims for which there is no reasoned state court decision, the federal habeas court will conduct an "independent review" of the record to determine whether the state court decision was contrary to, or an unreasonable application of, controlling United States Supreme Court precedent. *See Haney v. Adams*, 641 F.3d 1168, 1171 (9th Cir.2011); *Allen v. Ornoski*, 435 F.3d 946, 954–55 (9th Cir.2006). Even in the absence of a prior reasoned decision, § 2254(d)'s limitations on granting habeas relief remain. *Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011) ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").

■ In determining whether a state court decision was based on an "unreasonable determination of the facts" under 28 U.S.C. § 2254(d)(2), such a decision is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 130 S.Ct. 841, 849, 175 L.Ed.2d 738 (2010). The "unreasonable determination of the facts" standard may be met where "the state court has before it, yet apparently ignores, evidence that supports petitioner's claim." *Ocampo v. Vail*, 649 F.3d 1098, 1106 (9th Cir.2011); *Taylor v. Maddox*, 366 F.3d 992, 1008 (9th Cir.2004) (state court's "failure to take into account and reconcile key parts of the record casts doubt on the process by which the finding was reached, and hence on the correctness of the finding").

## V.

### *DISCUSSION*

**A.** ***Petitioner Has Not Shown a Due Process or Confrontation Clause Violation***

Petitioner's first claim is that the admission of Wilberger's unsworn testimony and taped statement violated state law and his federal constitutional rights. FAP Supp. Mem. at 10–19. Petitioner principally appears to contend that his federal due process rights were violated because the trial court failed to comply with the California Evidence Code. Petitioner also contends that his rights under the Confrontation Clause were violated.

In his opening brief to the California Court of Appeal (Lodg. 3 at 14, 17) and in his petition for review to the California Supreme Court (Lodg. 10 at 4, 7), petitioner argued that the admission of unsworn testimony was admitted in violation of California Evidence Code § 710 and "in violation of appellant's right to due process and confrontation under the United States Constitution, Amendments V and VI." Neither the Court of Appeal in its reasoned decision nor the California Supreme Court in its silent denial explicitly addressed petitioner's federal due process claim. The Court of Appeal found petitioner's argument under state law waived "[b]ecause defense counsel did not object to Wilberger's testimony but instead went on to cross-examine him ..." Lodg. 9 at 4 (citing, inter alia, *Richard M. v. Superior Court*, 4 Cal.3d 370, 377, 93 Cal.Rptr. 752, 482 P.2d 664 (1971)). The Court of Appeal also found that petitioner's confrontation rights were satisfied. Lodg. 9 at 5.

Because the Court of Appeal found petitioner's evidentiary claim waived by petitioner's failure to object at trial, respondent contends that petitioner's due process claim is procedurally barred in its entirety,

and in any event fails to set forth a cognizable federal claim. Answer at 22–25. Respondent further contends that the Court of Appeal reasonably rejected petitioner's confrontation claim. The court will address these issues in turn.

### 1. Petitioner's State Law Claim Is Procedurally Defaulted, and Is Not Cognizable in Any Case on Federal Habeas Corpus Review

█ In order for a claim to be procedurally defaulted for federal habeas corpus purposes, the opinion of the last state court rendering a judgment in the case must clearly and expressly state that its judgment rests on a state procedural bar. *See Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *see also Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Thomas v. Goldsmith,* 979 F.2d 746, 749 (9th Cir.1992). Under California law, the failure to interpose a specific and timely objection in the trial court on the ground advanced on review independently serves as a procedural bar to consideration of the issue by the appellate courts. *People v. Alvarez,* 14 Cal.4th 155, 186, 58 Cal.Rptr.2d 385, 926 P.2d 365 (1996). Here, the California Court of Appeal "clearly and expressly" invoked the foregoing procedural bar when it found that petitioner's California Evidence Code claim had been waived for failure to object in the trial court. Lodg. 9 at 4.

█ Ordinarily, if a petitioner can demonstrate cause, including attorney error rising to the level of constitutionally inadequate assistance of counsel, and prejudice, he may be excused from procedural default. *See Coleman,* 501 U.S. at 750, 111 S.Ct. 2546; *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). This analysis would be futile, here, however, because this portion of petitioner's challenge rests exclusively on a determination of state law. Such a claim is not cognizable on federal habeas corpus review. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

### 2. Petitioner Has Not Shown the Admission of Wilberger's Statement Amounted to a Due Process Violation Absent a Confrontation Clause Violation

█ Respondent argues that the federal due process aspect of petitioner's first claim is also procedurally barred. The court disagrees. In his opening brief to the California Court of Appeal (Lodg. 3 at 14) and his petition for review to the California Supreme Court (Lodg. 10 at 4), petitioner argued that the admission of unsworn testimony was "in violation of appellant's right to due process and confrontation under the United States Constitution, Amendments V and VI." Neither the Court of Appeal in its reasoned decision nor the California Supreme Court in its silent denial explicitly addressed petitioner's federal due process claim. Therefore, any procedural bar as to the federal due process claim was not invoked clearly and expressly. *See Coleman,* 501 U.S. at 722, 111 S.Ct. 2546.

█ But although petitioner's due process claim is not procedurally barred, it is largely premised on an asserted violation of state evidence law. Petitioner's addition of the phrase "due process" to his state law claim does not transform it into a federal claim. *See Langford v. Day,* 110 F.3d 1380, 1389 (9th Cir.1996) (stating that petitioner cannot "transform a state-law issue into a federal one merely by asserting a [constitutional] violation"); *Lacy v. Lewis,* 123 F.Supp.2d 533, 551 (C.D.Cal. 2000) ("Merely adding the phrase 'due process' to state law claims does not transform those claims into federal claims; rather, they remain state law claims

'dressed up' as federal due process claims."). Indeed, the admission of evidence is generally a matter of state law and not cognizable on federal habeas review. *Estelle,* 502 U.S. at 67–68, 112 S.Ct. 475; *Jammal v. Van de Kamp,* 926 F.2d 918, 919 (9th Cir.1991) (the "failure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief"); *see also Crane v. Kentucky,* 476 U.S. 683, 689, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (declining to "to impose constitutional constraints on ordinary evidentiary rulings by state trial courts.").

 There is, however, one exception to the general rule that evidentiary matters from state trials are not cognizable on federal habeas review. "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett,* 63 F.3d 926, 930 (9th Cir.1995) (citing *Estelle,* 502 U.S. at 67–68, 112 S.Ct. 475). The question then is whether the admission of Wilberger's unsworn testimony was fundamentally unfair such that it deprived petitioner of due process, in violation of "clearly established Federal law" as laid out by the Supreme Court. 28 U.S.C. § 2254(d); *Holley v. Yarborough,* 568 F.3d 1091, 1101 (9th Cir.2009); *Jammal,* 926 F.2d at 919. Given that neither side made any objection prior to the admission of Wilberger's unsworn testimony, petitioner has a difficult task in attempting to show that the admission of such testimony rendered the trial fundamentally unfair.

In this context of determining whether evidentiary matters at state trials constitute due process violations, the Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly, limiting them to specific guarantees enumerated in the bill of rights. *Estelle,* 502 U.S. at 72–73, 112

S.Ct. 475 (citing *Dowling v. United States,* 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990)). For example, the Supreme Court has barred the introduction of evidence in state court criminal proceedings that violated the Fourth Amendment (search and seizure), *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Fifth Amendment (confessions), *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Sixth Amendment (Confrontation Clause), *Crawford v. Washington,* 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); and Sixth Amendment right to counsel, *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). *See Kadoshnikos v. Hartley,* No. CIV S–11–0763 KJM EFB P, 2012 WL 1155684, at *11 (E.D.Cal. April 5, 2012) (collecting cases).

Consequently, in this case whether petitioner has shown a due process violation largely turns on whether petitioner has shown a confrontation violation. The court will therefore consider the confrontation issue.

**3. Given Petitioner's Counsel's Waiver of Petitioner's Confrontation Clause Rights, Petitioner Has Not Shown Either a Confrontation or a Due Process Violation**

Mixed in with his due process claim, petitioner contends that he was denied his Sixth Amendment right to confrontation when the trial court admitted into evidence the unsworn testimony and out-of-court statement of Fred Wilberger. FAP Mem. at 12; FAP Supp. Mem. at 13–15. On petitioner's direct appeal, the Court of Appeal held that "[b]ecause Wilberger was available for cross–examination after his unsworn testimony was received without objection, and was in fact cross-examined, we hold that Griffin's confrontation rights

were satisfied." Lodg. 9 at 5. Although the Court of Appeal erred in holding that Wilberger's availability for cross-examination cured his failure to swear an oath, the Court of Appeal was correct to the extent that the right to confrontation may be waived, and was here.

▮ In *Maryland v. Craig*, the Supreme Court affirmed prior rulings of the Court and held that both an oath and availability for cross-examination are required under the Confrontation Clause: "[T]he right guaranteed by the Confrontation Clause includes not only a 'personal examination,' but also (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *Maryland v. Craig*, 497 U.S. 836, 845–46, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) (quoting *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) and citing *Mattox v. United States*, 156 U.S. 237,

242, 15 S.Ct. 337, 39 L.Ed. 409 (1895)).[3] Although there is no constitutionally required form of oath (*United States v. Ward*, 989 F.2d 1015, 1019 (9th Cir.1992); *Moore v. United States*, 348 U.S. 966, 75 S.Ct. 530, 99 L.Ed. 753 (1955) (per curium)), the witness must, at a minimum, give a statement conveying that he or she is "impressed with the duty to tell the truth and understands that he or she can be prosecuted for perjury." *Cf. Gordon v. Idaho*, 778 F.2d 1397, 1400 (9th Cir.1985) (determining the form needed under the Federal Rules of Civil Procedure).

▮ The portion of the California Court of Appeal's opinion holding that Wilberger's failure to swear an oath was cured by Wilberger's availability for cross-examination is contrary to Supreme Court law. Under *Craig*, availability for cross-examination does not cure a witness's failure to swear an oath. It is the "combined effect of [the] elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier of fact—[that] serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings." *Craig*, 497 U.S. at 846, 110 S.Ct. 3157 (citations

---

**3.** *See also Crawford*, 541 U.S. at 52–53 & n. 3, 124 S.Ct. 1354 (finding that, historically, the right of confrontation was concerned with "unsworn testimonial statements" and that "[t]he claim that unsworn testimony was self-regulating because jurors would disbelieve it, is belied by the very existence of a general bar on unsworn testimony" (internal citation omitted)); *United States v. Owens*, 484 U.S. 554, 560, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (holding that the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness satisfy the Constitution when a hearsay declarant is present at trial and subject to unrestricted cross-examination) (citing *Green*, 399 U.S. at 158–61, 90 S.Ct. 1930); *Application of*

*Gault*, 387 U.S. 1, 56–57, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (holding that the rule with regard to sworn testimony in juvenile courts is the same as in adult tribunals and that the Confrontation Clause requires "confrontation and sworn testimony by witnesses available for cross-examination"); *Bridges v. Wixon*, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945) (holding that just as the unsworn statements are not admissible as substantive evidence in a criminal case, they are not admissible in an alien deportation hearing, because "[s]o to hold would allow men to be convicted on unsworn testimony of witnesses—a practice which runs counter to the notions of fairness on which our legal system is founded." (footnote omitted)).

omitted). In this case, Wilberger's in-court statement violated the Confrontation Clause. So too did the admission of Wilberger's taped statement. Although "the Confrontation Clause places no constraints at all on the use of [ ] prior testimonial statements ... so long as the declarant is present at trial to defend or explain it" (*Crawford,* 541 U.S. at 59 n. 9, 124 S.Ct. 1354), here, Wilberger was never sworn and thus would not have been competent to defend or explain his statements, even if he had been asked to do so. Wilberger was as good as an unavailable witness, in which case the prior statement would not have been admissible unless petitioner had a prior opportunity to cross-examine Wilberger. *See Crawford,* 541 U.S. at 59, 124 S.Ct. 1354. Because Wilberger did not testify at the preliminary hearing, petitioner was never afforded such an opportunity.

The Court of Appeal relied on *People v. Richardson,* 43 Cal.4th 959, 1006, 77 Cal. Rptr.3d 163, 183 P.3d 1146 (2008), to find no confrontation violation where the unsworn witness was available for cross-examination. Lodg. 9 at 5. The California Supreme Court in *Richardson* held in pertinent part that the admission of a prior inconsistent statement does not violate the Confrontation Clause when the declarant testifies at trial and is subject to cross-examination. *Id.* (citing *People v. Williams,* 16 Cal.4th 153, 200, 66 Cal. Rptr.2d 123, 940 P.2d 710 (1997)). But the *Richardson* court did not consider whether the Confrontation Clause would have been violated had the trial testimony in question been unsworn. The Court of Appeal also cited *In re Heather H.,* 200 Cal.App.3d 91, 95–96, 246 Cal.Rptr. 38 (1988), for the proposition that it is not unconstitutional to receive unsworn testimony. Lodg. 9 at 4. *In re Heather H.,* in turn, cites to the American Jurisprudence treatise, which now circularly cites to *In re Heather H.* for its assertion that "[n]o constitutional

provision is violated when unsworn testimony is received," but goes on to state that "to permit an unsworn witness in a criminal case to testify on behalf of the government is a violation of the legal rights of the defendant." 81 Am.Jur.2d Witnesses § 687 (2012). None of these sources is persuasive in light of controlling United States Supreme Court precedent to the contrary. Respondent's reliance on *Perez v. California,* No. 07cv1662–WQH, 2009 WL 800229, at *10 (E.D.Cal. Mar. 25, 2009) (citing *In re Katrina L.,* 200 Cal. App.3d 1288, 247 Cal.Rptr. 754, 760 (1988)), for the contention that "the Supreme Court has never held that the admission of unsworn testimony constitutes a constitutional violation" is also unavailing in light of the holding in *Craig.* *See* Answer at 16 n. 8.

▆▆▆▆ But the Court of Appeal rightly held that petitioner's attorney waived petitioner's confrontation right by failing to object at the outset to Wilberger's continued presence on the stand, and the opinion can stand on this ground alone. Confrontation Clause rights may be waived. *See, e.g., Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 2534 n. 3, 174 L.Ed.2d 314 (2009) ("The right to confrontation may, of course, be waived, including by failure to object to the offending evidence ..."); *Gonzalez v. United States,* 553 U.S. 242, 247–50, 128 S.Ct. 1765, 170 L.Ed.2d 616 (2008) (holding that, in the federal criminal proceeding context, while some rights, such as right to counsel, right to plead not guilty, right to jury trial, and right to testify on one's own behalf, cannot be waived by the attorney alone, counsel retains full authority to manage conduct of the trial, including what objections to raise); *Godinez v. Moran,* 509 U.S. 389, 399, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) (noting that a defendant may decide to waive his right of confrontation); *United States v. Gamba,* 541 F.3d 895, 900 (9th

Cir.2008) (counsel may deliberately and as a result of trial tactics and strategy waive the accused's Sixth Amendment right to cross-examination and confrontation); *Wilson v. Gray*, 345 F.2d 282, 286 (9th Cir. 1965) ("It has been consistently held that the accused may waive his right to cross examination and confrontation and that the waiver of this right may be accomplished by the accused's counsel as a matter of trial tactics or strategy.").[4]

Because petitioner's trial counsel waived his confrontation right by failing to timely object to Wilberger's unsworn testimony, petitioner is not entitled to habeas relief based on his Confrontation Clause challenge. And given the absence of a confrontation violation, there is no basis for the court to find a due process violation either. Put simply, the admission of this unsworn testimony—without any objection to its admission from either counsel, and thus not in violation of either California evidentiary rules or the Confrontation Clause—did not render the trial fundamentally unfair. And at a minimum, given the absence of any objection prior to the admission of Wilberger's testimony, this court does not find that the California courts unreasonably applied controlling Supreme Court law or unreasonably determined the facts in implicitly rejecting petitioner's due process claim.

Accordingly, petitioner is not entitled to habeas relief on his first claim for violation of his due process and confrontation rights. The question, then, is whether counsel was ineffective in waiving petitioner's confrontation rights and failing to timely object so as to exclude Wilberger's testimony.

### B. Petitioner Received Ineffective Assistance of Counsel

Petitioner argues he was denied effective assistance of counsel under the Sixth Amendment when his trial counsel failed to object to the introduction of Wilberger's testimony after Wilberger refused to be sworn. FAP Supp. Mem. at 23. Further, petitioner argues, his counsel compounded the problem by conducting a cursory cross-examination of Wilberger, and by failing to present his objection the following day as one brought under the Confrontation Clause. *Id.* Petitioner contends that had Wilberger's testimony been excluded, there would have been insufficient evidence to convict. *Id.* at 24.

Petitioner raised these arguments on direct review to the California Court of Appeal. Lodg. 3 at 35–39. The Court of Appeal rejected the claim as best resolved by way of a habeas corpus petition. Lodg. 9 at 5–6. Petitioner again raised the arguments before the California Court of Appeal on habeas review, and that court rejected the claim, finding under the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), that petitioner's counsel acted reasonably and that petitioner failed to demonstrate prejudice. Lodg. 12; Lodg. 19.

### 1. The Court of Appeal's Rejection of Petitioner's Ineffective Assistance of Counsel Claim Was Based on an Unreasonable Determination of the Facts

■ When analyzing a claim for ineffective assistance of counsel where a state

---

4. *But see United States v. Armijo*, 5 F.3d 1229, 1237–39 (9th Cir.1993) (Alarcon, J., dissenting) ("To label the failure to swear an essential witness against a defendant in a criminal case an 'irregularity' ... is to ignore the teaching of the Court [in *Craig* ]."); *Torrez v.*

*Martel*, No. C08–1309–THE, 2010 WL 3222474, at *7 (N.D.Cal. Aug. 13 2010) ("The Supreme Court has not addressed whether trial counsel can waive the right to confrontation without the consent of the defendant").

court has issued a decision on the merits, a federal habeas court's ability to grant the writ is limited by two "highly deferential" standards. *Premo v. Moore*, —— U.S. ——, 131 S.Ct. 733, 740, 178 L.Ed.2d 649 (2011). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* (internal quotation marks and citation omitted); *see also Richter*, 131 S.Ct. at 785 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."). "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 131 S.Ct. at 786; *see also Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) (a state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision).

▮▮▮▮ This court may grant the FAP if it finds that the Court of Appeal unreasonably applied *Strickland*. Alternatively, this court may grant the FAP if the state court's adjudication of his claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). To grant a habeas petition under § 2254(d)(2), the factual findings must be "clearly erroneous," not merely because petitioner has the better of two arguments, but such that "we are left with 'a firm conviction' that the determination made by

the state court was wrong and that the one [petitioner] urges was correct." *Torres v. Prunty*, 223 F.3d 1103, 1108 (9th Cir.2000) (quoting *Van Tran v. Lindsey*, 212 F.3d 1143, 1153–54 (9th Cir.2000) (internal quotation marks omitted)). This court has that firm conviction with respect to two crucial factual findings.

The Court of Appeal's first crucial and unreasonable factual determination was that trial counsel's failure to object to the introduction of Wilberger's unsworn testimony was a reasonable tactical decision rather than a mistake. Specifically, the court found that "[counsel] knew he was waiving his objection," but elected instead of objecting to "hammer home for the jury the most favorable aspects of [Wilberger's] testimony." Lodg. 19 at 6–7. Based in part on this factual determination, the Court of Appeal concluded that trial counsel's non-objection was a reasonable trial tactic. But there is no support in the record for the court's factual determination.

Petitioner's trial counsel's own declaration does not support the Court of Appeal's finding that he deliberately waived the objection. In it, trial counsel submitted to the court that "I thought I had objected to any examination of Mr. Wilberger, when he first refused to be sworn . . . if I failed to do so, I believe I should have objected immediately to any further examination. . . ." Lodg. 12, Ex. 1 at 1. The Court of Appeal rejected counsel's statement that he made a mistake as incredible for two reasons. First, the court correctly pointed out that, at the time of trial, trial counsel plainly did not object before Wilberger was allowed to give unsworn testimony, nor did counsel ever contend he made such an objection. Lodg. 19 at 6. But by itself, this is insufficient for the court to have concluded that counsel deliberately decided to waive his objection.

The Court of Appeal's second reason was the more critical one: "[counsel] admitted that he considered moving to strike Wilberger's testimony after his direct examination ended," and "[counsel] does not state that he was unaware that his decision to cross-examine Wilberger amounted to a waiver of any objection to the oath-taking issue." Lodg. 19 at 6. This is a misconstruction of trial counsel's declaration. Counsel does not actually state that he considered moving to strike the testimony. *See* Lodg. 12, Ex. 1 at 1. What he does state is that, when he chose to cross-examine Wilberger, he did so because he thought the jury would not understand that Wilberger's unsworn testimony "could not technically be considered evidence." *Id.* This indicates that petitioner's trial counsel incorrectly believed he did not need to object to Wilberger's testimony— that counsel thought the unsworn testimony was not evidence in any event—and therefore his failure to object was not a tactical decision but an error based on ignorance of the law.

The trial record supports the conclusion that trial counsel failed to object due to ignorance of the applicable law rather than based on a deliberate, knowing, tactical decision. In particular, the day after Wilberger testified, when the prosecution sought to introduce the tape of Wilberger's prior inconsistent statements, petitioner's counsel asked for a sidebar and objected to the introduction of the tape "because Mr. Wilberger didn't give us any sworn testimony yesterday." RT at 609. The trial court agreed with counsel that Wilberger did not take the oath, and the prosecutor asked for time to research the question of whether the unsworn testimony constituted evidence. *Id.* Thus, there was ignorance of the law all around. But there is no indication in the record that trial counsel deliberately waived his objection to Wilberger's unsworn testimony.

"*Strickland* [ ] calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Richter*, 131 S.Ct. at 790 (citing *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052). The Court of Appeal's decision focuses almost exclusively on counsel's subjective state of mind through speculative " 'post hoc rationalization' for counsel's decisionmaking." *See id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 526–27, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). As such, much of the Court of Appeal's opinion can be disregarded as irrelevant under *Strickland*. Nonetheless, its unsubstantiated factual determination that trial counsel did not make a mistake (as counsel himself conceded) but instead deliberately chose to waive his objection played a substantial role in the Court of Appeal's conclusion that counsel's decision not to object did not fall outside the scope of reasonable trial tactics. *See* Lodg. 19 at 6–7.

The Court of Appeal's second crucial and unreasonable factual determination was that the trial court "came close" to getting Wilberger to swear to tell the truth, and therefore the Court of Appeal could "only conclude [counsel] believed a well-timed objection and motion to strike would have ultimately resulted in Wilberger stating the final words necessary to constitute the taking of the oath." Lodg. 19 at 7. Based on this factual determination, the Court of Appeal found both that counsel's failure to object was a reasonable trial tactic, and that a timely objection would not have resulted in a different outcome. But again, there is no basis in the record for the court's factual determination.

The premise of the determination is the Court of Appeal's finding that the trial court "came close" to actually completing its effort to swear Wilberger. This finding is flatly contrary to the record. The rec-

ord reveals that Wilberger simply and explicitly refused to take the oath, and never approached doing so. After the clerk read the oath, Wilberger stated, "No." RT at 353. The trial court then told Wilberger, "You have been told to swear to tell the truth. Do you understand that?" and Wilberger replied in the affirmative. RT at 354. Although Wilberger affirmed his understanding of his duty to tell the truth, there was no indication that he had agreed to do so. The trial court concluded with Wilberger by stating, "All right. We're going to proceed with your testimony. Do you understand that?" to which Wilberger responded, "Yes, Ma'am." *Id.* But the trial court made no effort to inquire whether Wilberger was then agreeing to tell the truth. The Court of Appeal's finding that after this colloquy Wilberger somehow "came close" to taking the oath is simply baseless. Indeed, the trial court recognized as much at the time. When, the next day, the prosecutor attempted to argue that Wilberger had taken the oath, the trial court promptly responded, "But he said no.... So he did not take the oath." RT at 609.

Perhaps even more groundless than its determination that Wilberger "came close" to taking the oath was the Court of Appeal's determination from that premise that "Wilberger would have taken the oath had the court phrased its inquiry more precisely." *See* Lodg. 19 at 7. Again, the record shows that, at the time of trial, the trial court clearly believed a different inquiry would not have caused Wilberger to take the oath. When the prosecutor asked the court to bring Wilberger back to try to get him to take the oath, the trial court responded, "For what reason? He's already refused to testify." RT at 610. The trial court asked the prosecutor, "Do you have any reason to believe he's going to take the oath?" and ruled, "I'm not bringing him up unless you know he's going to take the oath." *Id.* Given this record, the

Court of Appeal's finding that petitioner's counsel must have believed an objection would have resulted in Wilberger taking the oath, and that in fact Wilberger would have taken the oath if subjected to more precise inquiry, is simply without support and unreasonable.

■ Habeas relief is available where "the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim." *Taylor,* 366 F.3d at 1001; *see also Blumberg v. Garcia,* 687 F.Supp.2d 1074, 1113 (C.D.Cal.2010) (state court unreasonably ignored facts when evaluating whether prosecution used perjured testimony at trial); *Saracoglu v. Walker,* CV 09–2195–VAP (DTB), 2010 WL 1221764, at *11 (C.D.Cal. Jan. 27, 2010) (error to ignore testimony regarding whether out-of-court statement was testimonial hearsay); *Roman v. Hedgpeth,* ED CV 04–1226–JFW (FMO), 2008 WL 4553137, at *4 (C.D.Cal. Jun. 30, 2008) (appellate court ignored nature of defense and evidence as to jury misconduct claim). In the present case, the state appellate court plainly miscontrued the trial record in a material way. This is constitutional error under AEPDA.

Because the California Court of Appeal unreasonably determined the facts, this court must set aside those findings, and may grant petitioner's habeas petition if it finds on de novo review that petitioner's counsel's performance violated *Strickland. See Taylor,* 366 F.3d at 1008 ("When we determine that state-court fact-finding is unreasonable, . . . we have an obligation to set those findings aside . . . ."); *see also Panetti v. Quarterman,* 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007) (declining to apply AEDPA deference when state court made unreasonable determination of law under 28 U.S.C. § 2254(d)(1)). Thus,

this court now considers whether petitioner's trial counsel's performance was ineffective under *Strickland.*

### 2. Trial Counsel's Performance Fell Below an Objective Standard of Reasonableness

The Sixth Amendment guarantees effective assistance of counsel. In *Strickland,* the Supreme Court articulated the two-pronged test for demonstrating ineffective assistance of counsel. First, the petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. Petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See id.* at 690, 104 S.Ct. 2052. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.; see also Wiggins,* 539 U.S. at 521, 123 S.Ct. 2527 (declining to articulate "specific guidelines" for trial counsel conduct, and instead emphasizing that "the proper measure of attorney performance remains simply reasonableness under prevailing professional norms"). "[T]he court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052.

■ Cases, including *Strickland,* interpreting the objective reasonableness of counsel's actions have emphasized deference to counsel's knowing tactical decisions with regard to significant decisions during the trial. *See, e.g., Dows v. Wood,* 211 F.3d 480, 487 (9th Cir.2000) ("[C]ounsel's tactical decisions at trial, such as refraining from cross-examining a particular witness or from asking a particular line of questions, are given great deference and

must ... meet only objectively reasonable standards."). Further, "even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry,* 540 U.S. 1, 8–9, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (citing cases).

■ Here, the record demonstrates that trial counsel's failure to object to the prosecutor eliciting unsworn testimony from Wilberger was far from a knowing tactical choice, but was, instead, a mistake. In a declaration, counsel himself acknowledges that it was a mistake, stating that he thought he objected, and if he failed to do so he should have. Lodg. 12, Ex. 1 at 1. As discussed above, it appears that the error may have resulted from ignorance of the law in this area, as the next day petitioner's counsel appeared to believe that Wilberger's unsworn testimony did not constitute evidence regardless of his failure to object. *See* RT at 609. Given that the record reflects all the parties were confused and ignorant of the legal ramifications in the wake of Wilberger's refusal to swear the oath, petitioner's counsel's ignorance may have been understandable. Indeed, Wilberger's refusal to swear was both unexpected and unusual. Nonetheless, petitioner's counsel's ignorance of the law and failure to object were to the great detriment of his client.

Indeed, even if petitioner's counsel had made a deliberate, tactical decision to waive his objection to Wilberger's testimony and instead focus solely on his cross-examination of Wilberger, that tactical choice would have fallen below an objective standard for reasonable representation of petitioner. Trial counsel's failure to object gained nothing and cost everything. That Wilberger at trial claimed not to have ever seen petitioner before in his life was amply and redundantly brought out in direct ex-

amination; counsel's cross-examination to reiterate these points was unnecessary. In contrast to the useless points made on cross-examination, by failing to object, petitioner's counsel missed his one chance to exclude Wilberger's testimony.

Wilberger was the only witness who ever stated he saw petitioner shoot the victim. Before Wilberger testified, counsel for both sides anticipated that Wilberger would recant and the prosecution would then introduce Wilberger's recorded statements to police that incriminated petitioner. *See* RT at 343. His was therefore the most incriminating testimony, and the most critical to exclude, if possible. When Wilberger unexpectedly refused to take the oath, petitioner's counsel was given his chance. As the Court of Appeal's dissenting justice stated, "if there was a lawful way of preventing Wilberger from testifying, defense counsel had to act to accomplish that objective. An appropriate, lawful and unimpeachably correct objection to Wilberger's testimony was his refusal to testify under oath." Lodg. 19, Dissent at 2. The course that petitioner's counsel instead took—cross–examining Wilberger rather than objecting to his unsworn testimony—was not a reasonable course, whatever counsel's thinking may have been at the time.

Confrontation Clause rights may be waived by the actions of counsel alone. In some circumstances, a deliberate waiver by counsel of these rights would be a sound tactical decision. But it is not reasonable under prevailing professional norms to unwittingly waive a defendant's core constitutional rights, as apparently

happened here. And given what was at stake with the failure to object in this instance, it could not have been a reasonable tactical decision.

### 3. There Is a Reasonable Probability That, But for Counsel's Failure to Object, the Outcome of the Trial Would Have Been Different

■ After proving that counsel's errors fell below an objective standard of reasonableness, under the second prong of the *Strickland* test, a petitioner must affirmatively prove prejudice.[5] *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is "a probability sufficient to undermine the confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter,* 131 S.Ct. at 792.

■ Respondent argues that trial counsel's failure to object here did not prejudice petitioner, because an objection to the failure to properly administer the oath would not have been a basis for excluding Wilberger's testimony or his prior inconsistent statements, but rather would have been the basis for the proper administration of the oath. Answer at 41–42. As discussed above, the court sees nothing in the record to demonstrate that, had the oath been readministered, Wilberger would have sworn to it. In fact, the oath was properly administered to Wilberger.

---

**5.** Where a habeas petition governed by AED-PA alleges ineffective assistance of counsel under *Strickland,* the *Strickland* prejudice standard is applied and courts do not engage in a separate harmless error analysis using the standard in *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). *Avila v. Galaza,* 297 F.3d 911, 918 n.

7 (2002) ("We need not conduct a harmless error review of *Strickland* violations under *Brecht* [ ], because '[t]he *Strickland* prejudice analysis is complete in itself; there is no place for an additional harmless-error review.'" (quoting *Jackson v. Calderon,* 211 F.3d 1148, 1154 n. 2 (9th Cir.2000)).

The failure occurred as a result of his refusal to promise to tell the truth, not as a result of an ineffective reading of the oath.

It is certainly true that the trial court made no real effort to get Wilberger to take the oath after he refused. Had the trial court made this effort, as it should have, including threatening Wilberger with contempt, it is possible that Wilberger would have taken the oath. But it is also clear that, after having personally dealt with Wilberger, the trial court was skeptical that any further attempt to convince Wilberger to take the oath would have been fruitful. *See* RT at 610. Further, given that Wilberger was already in custody serving a prison sentence (*see* RT at 355), it is doubtful that the threat of contempt would have swayed him significantly. Thus, there is a substantial likelihood that, had counsel objected, Wilberger would have stood by his refusal to take the oath, and both his testimony and his prior statements would have been excluded.

Wilberger was important to the prosecution's case, and his recorded statement was repeatedly emphasized in the state's closing argument. *See* RT at 995–99. His recorded statement constituted the only eyewitness testimony that petitioner was the shooter. CT at 76–77. Although there was other incriminating evidence, including Williams's testimony that petitioner waived her out of the way right before the shooting, Williams also consistently emphasized that she did not see petitioner with a gun that night. The jury might have found the other evidence sufficient to convict, but the prosecution's case was far stronger with Wilberger's statements. Given the importance of Wilberger's statements, the court "cannot say with fair assurance that this evidence did not substantially influence the jury." *See Hurd v. Terhune*, 619 F.3d 1080, 1090–91 (9th Cir. 2010); RT at 995–1001. Accordingly, the court is convinced that there is a reasonable probability that the jury would have come to a different conclusion had trial counsel not failed to object.

In short, the court concludes that petitioner's trial counsel's failure to object to Wilberger's unsworn testimony was neither objectively reasonable nor the result of reasoned trial strategy, and that petitioner has demonstrated prejudice sufficient to call into question the outcome of the trial. As such, petitioner is entitled to habeas relief based on the ineffective assistance of counsel he received at trial.

## C. *This Court Will Not Determine the Sufficiency of the Evidence Without Wilberger's Testimony*

Petitioner argues that, without Wilberger's testimony, insufficient evidence supports the jury's verdict as to first degree murder. FAP Mem. at 14–18; FAP Supp. Mem. at 24–26. But the California Court of Appeal did not decide that issue. Instead, the Court of Appeal held that because petitioner's Confrontation Clause rights were satisfied, petitioner's substantial evidence argument necessarily failed: "Griffin's substantial evidence argument depends on a holding that Wilberger's testimony and the prior inconsistent statement where he identified Griffin should not have been in evidence." Lodg. 9 at 5. In other words, the Court of Appeal did not consider whether there would have been insufficient evidence absent Wilberger's testimony.

This court has no need to consider that issue either. In light of the court's finding that petitioner is entitled to habeas relief due to the ineffective assistance of his counsel, this matter should be remanded for a new trial, or petitioner should be released, irrespective of the sufficiency of the evidence at the first trial.

## VI.

### *RECOMMENDATION*

IT IS THEREFORE RECOM-MENDED that the District Court issue an Order: (1) approving and accepting the findings in this Report and Recommendation; (2) directing that Judgment be entered granting the First Amended Petition; and (3) directing respondent to release petitioner unless the State of California elects to retry petitioner within 90 days of the filing of the order.